Gladys **BISSONETTE**, Ellen **Moves Camp, Eugene White Hawk, Marvin Ghost Bear, Edgar Bear Runner, Oscar Bear Runner, Severt Young Bear, Rachel White Dress, Helen Red Feather, Eddie White Dress, Vicki Little Moon, Madonna Gilbert, Lorelei Means, and Carla Blakey, Appellants,**

v.

Alexander **HAIG, Richard G. Kleindienst, Joseph T. Sneed, Charles D. Ablard, Joseph H. Trimbach, Ralph E. Erickson, Harlington Wood, Jr., Kenneth Belieu, Rolland Gleszer, Edmund Edwards, John Hay, and Volney F. Warner, Appellees.**

No. 84–2617.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1986.

Decided Sept. 16, 1986.

David Engdahl, Federal Way, Wash., for appellant.

James M. Spears, Dept. of Justice, Washington, D.C., for appellee.

Before LAY, Chief Judge, and HEANEY, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, and MAGILL, Circuit Judges, en banc.

ARNOLD, Circuit Judge.

The complaint in this case alleges, among other things, that plaintiffs were seized and confined within the Village of Wounded Knee, South Dakota, by defendants, and that defendants accomplished this seizure and confinement by use of the United States Army, in violation of the Posse Comitatus Act, 18 U.S.C. § 1385. That statute makes it a felony to use the United States Army for domestic law-enforcement purposes, unless the use is expressly authorized by the Constitution itself or Act of Congress. The complaint alleges that defendants' acts violated not only the Posse Comitatus Act, but also the Fourth, Fifth, and Eighth Amendments to the Constitution of the United States.

In *Bissonette v. Haig*, 776 F.2d 1384 (8th Cir.1985), a panel of this Court held that the complaint was not so deficient as to be subject to dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The panel held that the complaint stated a claim under the Fourth Amendment. A seizure in violation of the Posse Comitatus Act, it reasoned, was "unreasonable" within the meaning of the Fourth Amendment, in view of the long American tradition limiting the military's internal and domestic activities. The Fifth and Eighth Amendment theories of the complaint, however, were held legally insufficient, and to that extent the judgment of the District Court (which had dismissed the complaint in its entirety) was affirmed. As to the Fourth Amendment, the case was remanded for further proceedings, including, as appropriate, summary judgment or trial.

We granted the defendants' petition for rehearing en banc. After supplemental briefing and oral argument, we reach the same conclusions as the panel did. We adopt the substance and reasoning of its opinion, which need not be repeated here at length. We add a few words to address the major points made by defendants in their rehearing petition, supplemental brief, and oral argument.

1.

It was suggested at the argument that defendants may be immune, either absolutely or qualifiedly, from personal liability for damages. There may be a qualified-immunity defense here. But it has never been pleaded, or even urged in any of the briefs, at least in this Court. Indeed, defendants have not yet filed an answer. On remand, they will be free to make a claim of immunity, which can then be litigated in due course after such development of the facts as may be appropriate. We have before us only the question whether the complaint states a claim, and a complaint need not negative a qualified-immunity defense. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

2.

The same answer applies to defendants' suggestion that their conduct was not in violation of the Posse Comitatus Act because it was expressly authorized by other statutes, *e.g.*, 25 U.S.C. § 180. They argue that this statute expressly authorizes the use of military force to remove anyone who unlawfully attempts to take over lands that

the United States has by treaty granted to an Indian tribe. "Under this provision," defendants say, Appellees' Supplemental Brief on Rehearing en Banc 14, "use of military force plainly would have been appropriate at Wounded Knee, where a group largely composed of non-members of the Oglala Sioux Tribe invaded the Pine Ridge Reservation with the avowed purpose of ousting the elected tribal government, and where the tribal government in fact requested military intervention." This may be what happened, and 25 U.S.C. § 180 may turn out to be a good defense, but there is no way we can tell for sure at this stage of the game. On remand, defendants may set up in justification any statute, including Section 180, and any facts they can prove. We could dismiss the complaint under Rule 12(b)(6) only if these defenses were evident on its face, creating an insuperable bar to relief, and no one even argues that is true here.[1]

### 3.

Defendants' most substantial argument is that it is wrong to equate violation of a statute—here the Posse Comitatus Act— with violation of a constitutional provision—here the Fourth Amendment. This is the real issue in the case, and defendants are right to urge it vigorously. A search or seizure otherwise permissible, they say, cannot become unconstitutional simply because it violates a statute. Military violators of the Posse Comitatus Act are subject to criminal prosecution, but committing a felony is not the same thing as violating the Constitution. Congress should not be able by statute to create and shape constitutional rights and duties. Furthermore, they argue, the Posse Comitatus Act itself does not create a private right of action for damages for its violation (and plaintiffs do not now deny this), so recognizing a Fourth Amendment theory in this case would allow plaintiffs to do indirectly, by way of a *Bivens* constitutional-tort action, what they could not do directly.

Certainly it is true that the Constitution is conceptually and practically distinct from any Act of Congress, and it is not the law that any search and seizure that violates a federal statute also violates the Fourth Amendment. The panel opinion explains why we believe the Posse Comitatus Act is a special case, justifying the result we have reached. There is nothing startling or novel about using a statute in this way. The Fourth Amendment (we begin, necessarily, with its words) forbids "unreasonable" searches and seizures. The word "unreasonable" implies that the propriety of a search or seizure is to be judged against a background or matrix of societal expectations and assumptions. Some reference must be made to a source outside the Fourth Amendment itself to determine, for example, whether an expectation of privacy is reasonable and therefore deserving of constitutional protection. Such sources include "concepts of real or personal property law [and] ... understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143–44 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978). Acts of Congress, which after all must be at least *prima facie* evidence of what society as a whole regards as reasonable, are among these sources.

We will mention a few examples of this form of reasoning in Fourth Amendment jurisprudence. A whole line of cases has arisen holding that the Amendment applies with less force to inspections and searches of closely regulated businesses. A long history of pervasive regulation—a long history, that is, of *statutory* activity—affecting the particular industry, is one of the factors stressed in holding certain searches "reasonable." *E.g., Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (Court notes that statutes provide a

---

**1.** Our opinion in no way limits the power of Congress expressly to authorize use of the military, either in 25 U.S.C. § 180 or in any of the other laws granting such authority, *e.g.,* 10 U.S.C. §§ 333 (enforcement of judicial decrees by military pursuant to presidential proclama-tion), 371–78 (enforcement of drug laws in some circumstances). The question of what limits the Constitution places on such express statutory authorizations is not presented by this appeal.

certain and regular program of inspection of mines; defers to legislative determination that it is reasonable not to require a warrant); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (firearms industry; search upheld; "Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority." *Id.* at 316, 92 S.Ct. at 1596.); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (warrantless search of business premises of liquor licensee upheld, but forcible entry disapproved because it exceeded inspection authority granted by statute). This Court applied the pervasively-regulated-industry doctrine to uphold searches and seizures on a lesser-than-usual showing of probable cause in *United States v. Jamieson-McKames Pharmaceuticals, Inc.*, 651 F.2d 532 (8th Cir.1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). In doing so, however, we stressed that the result would be otherwise if the "extent of the intrusion [were not] ... limited to the purposes specified *in the statute*," 651 F.2d at 542 (emphasis supplied). It is settled, then, that statutes of a certain kind can be factors tending to make reasonable a search that would otherwise violate the Fourth Amendment.

Two recent Supreme Court cases are a variation on this theme. In both *Dow Chem. Co. v. United States*, —— U.S. ——, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986), and *California v. Ciraolo*, —— U.S. ——, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), aerial searches were upheld against Fourth Amendment challenges. In both cases the Court mentioned that the official aircraft conducting the searches was within public navigable airspace. Federal statutes and regulations, defining navigable airspace, were cited. It seems that if, to take *Dow* as an example, the EPA-rented airplane had not been in lawful airspace, a different result would have followed, even though such reasoning makes constitutional protections under the Fourth Amendment depend, in part, on the contours of statutes

and regulations, which are subject to change by Congress or the issuing regulatory agency.

It is equally true that the presence of statutes and regulations may make unreasonable a search that might otherwise have been perfectly valid under the Fourth Amendment. In *Oliver v. United States*, 239 F.2d 818 (8th Cir.), *cert. dismissed*, 353 U.S. 952, 77 S.Ct. 865, 1 L.Ed.2d 858 (1957), postal authorities opened and searched a package which was tied with twine but not sealed shut. *Ex parte Jackson*, 6 Otto 727, 96 U.S. 727, 24 L.Ed. 877 (1878), had held, and it remains the law, that warrantless searches of sealed letters and packages deposited in the mail are unconstitutional. In *Oliver* the government argued that *Jackson* did not apply: the package in question was not "sealed." But first-class postage had been paid on the package, and postal regulations in effect at the time of the search said that letters and packages bearing first-class postage were not subject to inspection without a warrant. We held the search unconstitutional. It did not bother us that the result might have been different if postal regulations had authorized a search of unsealed packages:

> It is not of consequence here that it may constitutionally have been possible for statutes or regulations of broader scope as to mail examination to have been adopted. The question of unreasonable search and seizure in postal inspections is entitled to be resolved, where legislative measures or administrative regulations exist, by such valid limits as have been fixed and held out thereunder as constituting the extent of mail opening and examination in which the Post Office Department will engage.

239 F.2d at 823. This passage comes close to fitting precisely the case before us.

Not only federal law, but also state law, can be relevant in determining what is reasonable under the Fourth Amendment. For example, in *United States v. Rambo*, 789 F.2d 1289 (8th Cir.1986), a criminal defendant moved to suppress evidence seized at the time of his warrantless arrest

by police officers. He argued that under Minnesota law police officers may "arrest an individual for a misdemeanor without a warrant only for offenses committed in their presence...." *Id.* at 1292. We held that the motion to suppress had been correctly denied, but only after carefully examining the statutes of Minnesota to determine the authority of the officers. "The validity of a warrantless arrest by a state officer is an issue governed in the first instance by state law. *Johnson v. United States,* 333 U.S. 10, 15 n. 5 [68 S.Ct. 367, 370 n. 5, 92 L.Ed. 436] (1948)." *Rambo,* 789 F.2d at 1293. Not only statutes of the state, but also opinions of the Supreme Court of Minnesota, were analyzed in our opinion. The clear premise was that if the arrest was not authorized by Minnesota law, it was invalid, and the motion to suppress, based on the Fourth Amendment, would have to be granted. *Id.* at 1292–93. A search authorized by state law could still be constitutionally invalid, *id.* at 1295–1297, but a search unauthorized by state law would *ipso facto* violate the Fourth Amendment.

An analogous rule applies, of course, to federal officers. A network of statutes authorizes them to make arrests in various circumstances and for various types of offenses. See, *e.g.,* 18 U.S.C. §§ 3052 (FBI Agents), 3053 (United States Marshals), 3056 (Secret Service), 3061 (postal personnel). Arrests outside the authority granted by these statutes are unlawful and invalid (unless they can be upheld as citizens' arrests under the common or statute law of the state where they took place), and anything seized incidentally to the arrest must be suppressed as evidence, absent some exception to the exclusionary rule. See, *e.g., Alexander v. United States,* 390 F.2d 101 (5th Cir.1968) (evidence suppressed because arrest not authorized by federal or state statutes); *United States v. Moderacki,* 280 F.Supp. 633 (D.Del.1968) (same). *Cf. Montgomery v. United States,* 403 F.2d 605 (8th Cir.1968) (arrest by postal inspectors upheld under common law of Missouri; therefore unnecessary to decide whether federal statutes also authorized the arrest;

motion to suppress evidence accordingly denied). The fact that an arrest is authorized by statute is strong evidence of its reasonableness. See also *United States v. Watson,* 423 U.S. 411, 415, 96 S.Ct. 820, 823, 46 L.Ed.2d 598 (1976), upholding an arrest by postal inspectors without a warrant, and observing that 18 U.S.C. § "3061 represents a judgment by Congress that it is not unreasonable under the Fourth Amendment for postal inspectors to arrest without a warrant provided they have probable cause to do so." (footnote omitted).

In the present case, furthermore, we deal with something quite different from a seizure simply unauthorized by statute. We deal with a seizure affirmatively forbidden by a criminal law of long standing, itself expressive of an authentically American tradition of even longer standing. We conclude, for the reasons given in this opinion and in the panel opinion, that the complaint states a claim under the Fourth Amendment.

### 4.

Defendants were not alone in being displeased with the panel opinion. Plaintiffs also have taken exception to it, branding as "flat wrong" the panel's interpretation of the Posse Comitatus Act as not prohibiting indirect or passive military involvement, such as aerial surveillance and the furnishing of materials and supplies. In so holding, the panel followed Circuit authority in the form of *United States v. Casper,* 541 F.2d 1275 (8th Cir.1976) (per curiam), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977). Plaintiffs ask us to overrule *Casper.* We decline to do so.

### 5.

In sum, we adhere to the decisions made by the panel, rejecting the Fifth and Eighth Amendment theories pleaded in the complaint, but upholding as legally sufficient the Fourth Amendment theory, to the extent that the complaint alleges a violation of the Posse Comitatus Act as interpreted in *Casper.* The judgment of the District Court is therefore reversed, and this cause

is remanded for further proceedings consistent with this opinion.

It is so ordered.

FAGG, Circuit Judge, with whom BOWMAN, WOLLMAN, and MAGILL, Circuit Judges, join, dissenting.

The Posse Comitatus Act, 18 U.S.C. § 1385, was enacted by Congress during the reconstruction era in an apparent response to perceived abuses by the military in reconstruction states. The Act as enacted and until today was criminal in nature and provided no private cause of action for damages.

The court now judicially amends the Act to provide a private cause of action for individuals asserting Fourth Amendment violations. The court has no choice but to do so in light of the plaintiffs' concession that defendants' actions were in all other respects reasonable and nonactionable. As the panel itself recognized and the court today reconfirms, *ante* at 814, "[p]laintiffs' Fourth Amendment case * * * must stand or fall on the proposition that military activity in connection with the occupation of Wounded Knee violated the Posse Comitatus Act," *Bissonette v. Haig*, 776 F.2d 1384, 1389 (8th Cir.1985). Because I cannot accept the implications of the court's decision, I must dissent.

Unlike the court, I believe the restrictions imposed by the Posse Comitatus Act should not be the sole threshold consideration in determining whether an unreasonable seizure in violation of the Fourth Amendment has occurred. To accept the court's view renders unnecessary any examination of the circumstances or exigencies giving rise to the actions taken or the scope, nature, or purpose for which the actions were taken. Under the court's analysis, regardless of the lives saved, the property protected, and the otherwise reasonable and responsible actions of military officers seeking to assist civil law enforcement officials, a violation of the Posse Comitatus Act results in all other considerations becoming constitutionally irrelevant and per se constitutes a violation of the Fourth Amendment.

While the Posse Comitatus Act rightfully seeks to restrict military involvement in civilian affairs, the Act should not be viewed as constitutionally controlling. The Constitution itself does not prohibit or restrict such involvement, and in fact, there are numerous instances in this nation's history, both before and after the adoption of the Posse Comitatus Act, when the military has been called upon to assist civilian law enforcement officials. *See generally* Engdahl, *Soldiers, Riots, and Revolution: The Law and History of Military Troops in Civil Disorders*, 57 Iowa L.Rev. 1 (1971). A violation of the Act cannot be viewed in isolation from the particular situation before the court. Rather, there must be a qualitative analysis of the military involvement and the circumstances that gave rise to that involvement. Because defendants' actions were reasonable, I conclude no constitutional violation has been asserted.

Plaintiffs argue, however, that regardless of all else the actions taken by defendants cannot be constitutionally reasonable because they were felonious in nature. I agree with the court that "the Constitution is conceptually and practically distinct from any Act of Congress, and it is not the law that any search and seizure that violates a federal statute also violates the Fourth Amendment." *Ante* at 814. I am further unpersuaded by plaintiffs' argument because unlike most instances in which the action criminalized is inherently wrong and socially indefensible, the actions rendered criminal by the Posse Comitatus Act are not necessarily inherently improper. Instead, under the Act actions are equally felonious and punishable regardless of whether they are indefensible or, as here, in all respects honorable and blameless. As a result, because of the wide range of honorable and dishonorable actions falling equally within the scope of the Act, I believe that while a violation of the Act is a factor to be considered, the violation alone should not per se render equally liable for money damages the pillager and the liberator.

Here, it is truly ironic that military officials who responded to requests for assistance by civilian authorities and who in the face of an armed uprising acted not to subvert but to preserve and protect the Constitution and restore civilian rule now face substantial monetary liability. The actions taken were restrained and objectively reasonable and in the circumstances of this case fail to implicate any of the concerns identified by the panel opinion. *Bissonette,* 776 F.2d at 1387–88. In fact, the entire purpose behind the actions taken was to ensure and restore domestic tranquility, a goal pointedly identified by the Founding Fathers in the Preamble of the Constitution.

In addition to creating the potential for unwarranted monetary damages largely unrelated to any substantial Fourth Amendment interest, the court by focusing wholly on the Posse Comitatus Act has created a private cause of action not expressly or by implication authorized by Congress. If Congress wished to provide a private action for damages for the violation of the Posse Comitatus Act, Congress could have provided one. As allowed for in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971), and as clarified by the Supreme Court in *Bush v. Lucas,* 462 U.S. 367, 380, 103 S.Ct. 2404, 2412, 76 L.Ed.2d 648 (1983), there are cases, and I believe this to be one, in which Congress rather than the court should decide in the first instance whether a civil remedy should be available. *See Arcoren v. Farmers Home Administration,* 770 F.2d 137, 140 (8th Cir.1985).

As a final point, even accepting the court's view, I see no reason to prolong further the present action. Defendants have raised the issue of qualified immunity in their petition for rehearing en banc. No further factual development is needed in this case to resolve this issue.

Very simply, only today, more than thirteen years after the actions in question, is it in any way "clearly established" that otherwise entirely reasonable actions of the military are rendered constitutionally unreasonable and actionable by the violation of the Posse Comitatus Act. Because no person could reasonably have been expected to know that regardless of any other consideration a violation of the Posse Comitatus Act gives rise to and in fact constitutes a per se violation of the Fourth Amendment, I would dismiss plaintiffs' action on the basis of qualified immunity. *See Davis v. Scherer,* 468 U.S. 183, 193–96, 104 S.Ct. 3012, 3019–21, 82 L.Ed.2d 139 (1984); *see also Mitchell v. Forsyth,* 772 U.S. 511, 105 S.Ct. 2806, 2818, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The decision of the district court should be affirmed.