895 F.2d 438
 WESTERN STATES CATTLE CO., INC., an Iowa Corporation; Gary
D. DeHaan and Merritt Brown, Appellants,
v.
Phillip EDWARDS; Duane Bieber; James Arnez; Keith Kienow
and William Jones, Appellees.
 No. 89-1394.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 15, 1989.
Decided Jan. 30, 1990.
 
 David W. Jorgensen, Kearney, Neb., for appellants.
 Steven A. Russell, Lincoln, Neb., for appellees.
 Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and WEBB,* District Judge.
 HEANEY, Senior Circuit Judge.
 As a result of a Packing and Stockyards Administration (Agency) investigation, the Secretary of Agriculture suspended the licenses of the appellants. In the direct appeal of their suspension, we reversed, holding that there was insufficient evidence that they had overcharged their customers. Western States Cattle Co. v. United States, 880 F.2d 88 (8th Cir.1989) (Heaney, J.).
 
 
 1
 Western States and two of its principals, Gary DeHaan and Merritt Brown, brought a civil suit alleging that their privacy rights were violated by the unauthorized disclosure of business records to persons with whom they had done business. They sued the investigators, the regional supervisor and the head of the Agency. The district court dismissed the complaint for lack of subject matter jurisdiction, holding that the appellants could not show a violation of their constitutional rights and thus could not maintain a Bivens[1] action. We affirm.
 
 I.
 
 2
 Pursuant to the Packing and Stockyards Act of 1921 (Act), regulated businesses must maintain records of all their transactions. 7 U.S.C. Sec. 221 (1980). The regional offices of the Agency routinely review the business records of high-volume businesses. Under applicable regulations, each business must submit to an inspection of its records. 9 C.F.R. Sec. 201.95 (1989).
 
 
 3
 An Agency investigator reviewed Western States' records. He found that sometimes Western States received weight shrinkage discounts when it purchased cattle, but resold the cattle at full weight. Yet, Western States' invoices described Western States as an order-buyer--not as a dealer. The investigator copied Western States' records of these transactions, as the inspection regulation permits. Id. During the course of the subsequent investigation, past customers of Western States were shown Western States' transaction records for purchases made by those customers. The records shown to each customer included the invoices to them, indicating weight and price, and some of the purchase documents showing what Western States paid for the same cattle. Several customers had believed that the appellants were acting on their behalf merely as agents paid on commission. The customers were surprised to find that Western States had been retaining the shrinkage discounts and had been earning a profit far greater than the usual commission rates. Some customers signed complaints and an administrative action was brought. The Agency suspended the appellants' licenses. We reversed because there was insufficient evidence that Western States and its employees had held themselves out as agents. We did not question, nevertheless, that some customers subjectively believed that Western States had been acting as agents. Appellants sued for violation of their constitutional privacy rights caused by the disclosure of their business records to their past customers. They allege that they have lost the business of past customers.
 
 II.
 
 4
 The appellants have sued for a violation of their constitutional rights. They have not asserted jurisdiction under any separate federal statute. Bivens actions are available to remedy the invasion of constitutionally protected rights where other relief is unavailable. Schweiker v. Chilicky, 487 U.S. 412, 418, 108 S.Ct. 2460, 2465, 101 L.Ed.2d 370, 379-80 (1988). We agree with the district court that there is no jurisdiction in this case. We begin by examining appellants' fourth amendment claim.
 
 A.
 
 5
 Inspection is authorized under an Agency regulation which provides:
 
 
 6
 Inspection of business records and facilities.
 
 
 7
 Each stockyard owner, market agency, dealer, packer or live poultry dealer or handler concerned, upon proper request, shall permit authorized representatives of the Secretary to enter its place of business during normal business hours and to examine its business records pertaining to the Act, to make copies thereof and to inspect the facilities of such persons subject to the Act. Reasonable accommodations shall be made available to authorized representatives of the Secretary by the stockyard owner, market agency, dealer, packer or live poultry dealer or handler concerned for such examination of the records and inspection of facilities.
 
 
 8
 9 C.F.R. Sec. 201.95 (1989).
 
 
 9
 The parties agree that the constitutionality of the regulation is governed by New York v. Burger, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (warrantless search of an automobile junkyard upheld). The Court in Burger indicated that warrantless administrative searches were permissible where the business is closely regulated and where the regulatory rules limit the scope of the search. Id. at 702-04, 107 S.Ct. at 2643-44. In particular, we must scrutinize: (1) whether the administrative scheme represents a substantial government interest; (2) whether a warrantless inspection is necessary to further the regulatory interest; and (3) whether the rules governing the inspection offer a constitutionally adequate substitute for the warrant requirement of the fourth amendment--by providing notice that the inspections might be forthcoming--and by providing certain limits on the time, place and scope of the search.
 
 
 10
 The appellants concede that under section 201.95 a warrant is not required. They also concede that theirs is a closely regulated business[2] and that all but the last part of the Burger test is satisfied.[3] They argue, however, that the non-disclosure requirement of section 201.96 was violated. That regulation provides:
 
 
 11
 Unauthorized disclosure of business information prohibited.
 
 
 12
 No agent or employee of the United States shall, without the consent of the stockyard owner, market agency, dealer, packer or live poultry dealer or handler concerned, divulge, or make known in any manner, any facts or information regarding the business of such person acquired through any examination or inspection of the business or records of the stockyard owner, market agency, dealer, packer, or live poultry dealer or handler concerned, or through any information given by the stockyard owner, market agency, dealer, packer or live poultry dealer or handler concerned pursuant to the Act and regulations, except to such other agents or employees of the United States as may be required to have such knowledge in the regular course of their official duties, or except insofar a they may be directed by the Administrator or by a court of competent jurisdiction, or except as they may be otherwise required by law.
 
 
 13
 9 C.F.R. Sec. 201.96. The appellants view the non-disclosure requirement as a limit on the scope of the inspection and argue that the inspection was illegal because of subsequent disclosures. The district court assumed that this regulation had been violated, but concluded that no violation of appellants' constitutional rights had occurred.
 
 B.
 
 14
 Initially, we conclude that the search was valid. Section 201.95 properly limits the scope of the inspection. The regulation requires notice to the owner in the form of a request.[4] An inspection may be conducted only during normal business hours. Inspections are limited to specified records and facilities. Section 201.95 is similar to the statute upheld in Burger, which limited the search to business hours, the log book of the junkyard and the parts on the lot. See Burger, 482 U.S. at 693 n. 1, 107 S.Ct. at 2639 n. 1 (text of New York statute). There is no allegation that this particular inspection violated section 201.95 or was excessive in its scope.
 
 
 15
 The appellants argue instead that the warrantless inspection became invalid when the investigators violated the non-disclosure regulation by showing business records to past customers. They argue that section 201.96 acts as a limit on the scope of the inspections authorized under section 201.95, requiring that we judge the lawfulness of an inspection and the need for a warrant by the use made of the information at any time after the search. We conclude that section 201.96 is not a constitutionally required limit on the scope of the warrantless inspections authorized under section 201.95. While limits on post-inspection disclosure do protect privacy, and while rights to privacy may not terminate with a valid search, in assessing the reasonableness of the search itself we are concerned with the search's reasonableness at the time it was conducted.[5] We find no fourth amendment violation.
 
 III.
 
 16
 The appellants are thus left to argue that irrespective of the regulations, the disclosures violated their due process right to privacy under the fifth amendment. There are no cases on point, but the appellants analogize to Plante v. Gonzalez, 575 F.2d 1119 (5th Cir.1978).[6] In Plante, state legislators challenged a law requiring that they make detailed financial disclosures to the general public. The court balanced the legislators' constitutional right against forced disclosures against the public interest in the information. The law was upheld, in part, because elected representatives should expect that their positions would require some compromises of their personal privacy. Id. at 1135.
 
 
 17
 We conclude that under Plante, non-disclosure is not constitutionally required in this case. The appellants were aware that their records were open to inspection, and grant that theirs is a closely regulated business. These appellants cannot claim that they have an expectation of privacy that prevents investigators from showing records to Western States' customers to determine if there has been a violation of the Act. Section 201.96 allows disclosures where required by law, a court, or permitted by the Administrator. The regulation contemplates disclosures during the course of an enforcement investigation. There could not be a reasonable expectation that the records would remain secret even when wrongdoing was suspected.
 
 
 18
 Applying Plante's balancing test, we conclude that the appellants' due process right to privacy was not violated. The government interest in verifying the information disclosed on the invoices was substantial. The appellants should have expected that the records would not remain entirely private should wrong-doing be suspected. Moreover, records were shown only to past customers and customers were shown only records of their own past transactions with Western States. There was no disclosure to the general public.
 
 IV.
 
 19
 We also conclude that there was no violation of the appellants' procedural rights sufficient to support a Bivens action. At best, appellants could reasonably expect only that before any records were disclosed, permission from the Administrator would be sought by the investigators. Apparently, however, this is not the current practice of the Agency. When necessary, the Agency investigators disclose records to past customers during an investigation without prior approval but under limited circumstances.
 
 
 20
 3. ... The purpose of this procedure was to refresh the recollection of the customer as to the method in which the customer was buying cattle from Western States. This is of particular importance in the cattle industry since many of the contractual agreements are oral and the only records which refresh a customer's recollection are the invoice tickets.
 
 
 21
 4. During the course of this investigation, we did not show individual customers any business records that did not pertain to the individual customer's purchase of cattle from Western States. ...
 
 
 22
 5. I have conducted numerous investigations of this nature using the technique described during my employment with the Packing and Stockyards Administration. To the best of my knowledge and belief, it has been an acceptable investigative technique authorized by the agency since commencement of my employment.
 
 
 23
 Affidavit of Jimmy Arnez at 2 (June 29, 1988). See also Affidavit of Keith Kienow, Regional Supervisor, at 2 (June 29, 1988); Affidavit of Duane Bieber at 2 (June 29, 1988) (same).
 
 
 24
 While such use of records during an investigation might be quite sensible, it is not expressly allowed by the Agency's own regulations, nor is there any evidence in the record that this practice is in fact authorized under any general standing order which specifies when investigators may disclose records.[7]
 
 
 25
 Failure to adhere strictly to the non-disclosure regulation might give rise to a Bivens action where a reasonable Administrator could conclude that further investigation was unwarranted. In light of the facts of this case, however, we believe that any violation of the non-disclosure regulation procedures was sufficiently harmless that a judicially created Bivens remedy is not required. Western States' records on their face disclosed violations of the Act; extrinsic evidence was necessary to show that no violations had taken place. See Western States, 880 F.2d at 89-91 (review of the evidence). After the initial inspection, copied documents were taken to the regional office of the Agency. The inspection findings were reviewed by the regional supervisor to determine if further investigation was warranted and how such an investigation should proceed. Affidavit of Keith Kienow at 1; Affidavit of Duane Bieber at 1. Records were disclosed only as necessary to refresh the customers' memories. Clearly, there was sufficient cause to elevate Agency enforcement from a routine inspection to a more thorough investigation had this case been reviewed by the Administrator. The consideration given the appellants' case was commensurate with their privacy expectations and thus no constitutional right was violated.
 
 V.
 
 26
 This case and its predecessor have their origin in misinformation in the market place. Some past customers of Western States wanted to have cattle purchased for them on commission. The Agency inspection disclosed that Western States was not acting as an agent. The Agency investigation merely made known to Western States' customers that the cattle delivered by Western States was not being sold for commission. To the extent that Western States has subsequently lost business, it may be because some of their past customers prefer to deal with agents. We have previously accepted Western States' claim that they were not responsible for the past misunderstanding. While in a real sense the appellees are responsible for the misunderstanding being cleared up, their failure to have the Administrator approve in advance the use of the documents did not violate the appellants' constitutional rights. Accordingly, we affirm the decision of the district court.
 
 
 
 *
 The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (violation of fourth amendment prohibition against unreasonable searches and seizures can give rise to a suit for damages without express statutory authorization for suit). See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Bivens relief available for violations of the Cruel and Unusual Punishment Clause of the eighth amendment); Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Bivens relief available for violations of the Due Process clause of the fifth amendment)
 
 
 [2]
 A closely regulated business is one where the tradition, pervasiveness and regularity of the government's regulation reduces the owner's expectation of privacy in business records. Burger, 482 U.S. at 700-01, 107 S.Ct. at 2642-43. We do not decide today whether any or all of the businesses regulated pursuant to the Packing and Stockyards Act are closely regulated within the meaning of Burger. Nor is it clear whether under Burger all businesses subject to the same regulations should be treated the same; the need for warrantless inspections may vary between packing houses and intermediary dealers
 
 
 [3]
 The appellants argued before the district court, and less strenuously before us, that they did not give permission for the inspection and that the inspection took place at their accountant's offices rather than at their office. Neither claim is significant. Consent to search is not necessary under the regulation. Moreover, a regulated business is required to make reasonable concessions which may include the inspecting of documents where they are kept. We note that the appellees sharply contest the appellants' version of the facts
 
 
 [4]
 In a more general sense, notice that inspections may be forthcoming is usually provided upon registration with the Agency when the Agency regulations are mailed to each registrant. In the previously decided case, the appellants argued that Western States and its employees were never sent a copy of the regulations when Western States registered with the Agency
 
 
 [5]
 Appellants also argue that we should use section 201.96 to establish a constitutional floor for the Agency's conduct. They argue that our decision in Bissonette v. Haig, 800 F.2d 812 (8th Cir.1986) (en banc), stands for the proposition that statutes can enhance the scope of constitutional protections. We disagree with this reading of Bissonette. In that case, we looked to a statute for guidance on the reasonableness of a seizure where its reasonability was an open question. Id. at 814. We rejected the view that the constitutionality of searches and seizures was always governed by statutes. Id. In this case, the reasonableness of the regulation is governed by Burger
 
 
 [6]
 See also Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (where a state statute required that copies of certain drug prescriptions be filed with the state, the Court upheld the law noting that it prohibited public disclosure); Paul v. Davis, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1165-66, 47 L.Ed.2d 405 (1975) (personal privacy guarantee does not protect against disclosure of the fact of arrest on a shoplifting charge where no determination of guilt or innocence has yet been reached)
 
 
 [7]
 It is also not clear that a standing authorization to disclose records during the course of an investigation would be consistent with section 201.96. For this reason, the Agency should consider establishing defined procedures disclosed to the public which govern circumstances such as these. Until such procedures are in place, investigators should obtain the prior approval of the Administrator before disclosing any business records