**E. Lee COX and Becky Cox, d/b/a Pixy Pals Kennel, Petitioners,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

No. 90–1384.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1990.

Decided Feb. 13, 1991.

Robert F. Bartle, Lincoln, Neb., for petitioners.

Jeffrey A. Knishkowy, U.S. Dept. of Agriculture, Washington, D.C., for respondent.

Before ARNOLD and MAGILL, Circuit Judges, and BATTEY,* District Judge.

MAGILL, Circuit Judge.

Lee and Becky Cox, owners of Pixy Pals Kennel, petition for review of a decision of the Department of Agriculture suspending their license for ninety days, imposing a $12,000 civil fine, and ordering the Coxes to cease and desist from specified violations of the Animal Welfare Act. The Coxes claim that (1) the suspension violated § 558(c) of the Administrative Procedure Act because there was insufficient evidence to support the Department's finding that their violations of the Animal Welfare Act were willful; (2) they were unconstitutionally penalized for exercising their first

---

* THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

amendment rights; and (3) the sanctions imposed on them were excessive. We affirm.

## I.

The Coxes, at the time relevant to this action, jointly owned and operated Pixy Pals Kennel.[1] Pixy Pals is one of the largest dog brokers in Nebraska and has a gross income of over $1 million per year. During 1985 the Department of Agriculture's Animal and Plant Health Inspection Service (APHIS) began investigating the Coxes for suspected violations of the Animal Welfare Act (AWA), 7 U.S.C. §§ 2131–2156 (1982), and accompanying regulations. In January 1988, an APHIS investigator, Bob Wells, arrived to inspect the facility and records. Lee Cox told him to leave and said that Wells would have to make an appointment at least two weeks in advance if he wanted any information. While escorting Wells to his car, Cox said, "you people are just like the Gestapo ... you're just like the Communists ... leave and don't ever come back." After this incident, the Coxes sent a letter to APHIS stating that APHIS had no right to enter their property without their express written approval and repeating their demand of two weeks' notice before any inspection could take place. The Coxes also sent copies of this letter to other dog breeders and pet store owners with a cover letter urging them to sign it and send it to APHIS. The Coxes had earlier put out at least one newsletter critical of the Department and addressed to the same audience. That newsletter, although primarily devoted to criticism of the American Kennel Club, also referred to the A.K.C.'s "communistic conspirator friends at U.S.D.A."

The Department filed charges against the Coxes, and a hearing was held before an administrative law judge (ALJ) in December 1988. The ALJ found that the Coxes had committed forty-one violations of

---

1. The Coxes have since divorced, and Becky Cox now operates the kennel alone.

the AWA and its regulations, as follows: (1) twelve violations of 9 C.F.R. § 2.130,[2] delivering dogs less than eight weeks old to carriers for transportation in commerce; (2) thirteen violations of 7 U.S.C. § 2135 and 9 C.F.R. § 2.101,[3] failure to hold dogs at least five days after acquisition; (3) fifteen violations of 7 U.S.C. § 2140 and 9 C.F.R. § 2.75,[4] failure to maintain accurate records;[5] and (4) one violation[6] of 7 U.S.C. § 2146 and 9 C.F.R. § 2.126,[7] refusing to permit APHIS officials to inspect the Pixy Pals facility and records. All of the violations except the failure to permit inspection took place during 1985. The ALJ ordered the Coxes to cease and desist from these violations, imposed a $12,000 fine on them, and suspended their license for ninety days. In addition, the suspension was to continue until they demonstrated compliance with the AWA and regulations.

2. Section 2.130 provides: "No dog or cat shall be delivered by any person to any carrier or intermediate handler for transportation, in commerce, or shall be transported in commerce by any person ... unless such dog or cat is at least eight (8) weeks of age and has been weaned." 9 C.F.R. § 2.130.

3. The statute provides: "No dealer or exhibitor shall sell or otherwise dispose of any dog or cat within a period of five business days after the acquisition of such animal or within such other period as may be specified by the Secretary...." 7 U.S.C. § 2135 (1982).

The regulation provides, in pertinent part: "Any live dog or cat acquired by a dealer or exhibitor shall be held by him or her, under his or her supervision and control, for a period of not less than 5 full days, not including the day of acquisition, after acquiring the animal, excluding time in transit." 9 C.F.R. § 2.101(a) (footnote omitted).

4. The statute provides, in pertinent part: "Dealers and exhibitors shall make and retain for such reasonable period of time as the Secretary may prescribe, such records with respect to the purchase, sale, transportation, identification, and previous ownership of animals as the Secretary may prescribe." 7 U.S.C. § 2140 (1982).

The regulation provides, in pertinent part: "Each dealer ... shall make, keep, and maintain records or forms which fully and correctly disclose the following information concerning each dog or cat purchased or otherwise acquired.... (v) The date a dog or cat was acquired ...; (vi)(C) The date of birth or approximate age." 9 C.F.R. § 2.75(a)(1).

The Coxes appealed to the Department of Agriculture's judicial officer (JO), who affirmed the ALJ's decision. The Coxes then petitioned this court for review. They ask that we set aside the JO's order or, in the alternative, modify the sanctions imposed.

## II.

The Department of Agriculture's decision must be upheld if it is supported by substantial evidence. *Western States Cattle Co. v. United States Dep't of Agric.*, 880 F.2d 88, 89 (8th Cir.1989); *Farrow v. United States Dep't of Agric.*, 760 F.2d 211, 213 (8th Cir.1985).[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

5. For (1) through (3), each dog involved in the offense counts as a separate violation.

6. Even though the Coxes violated both the statute and the regulation, it counts as only one violation because the statute and regulation forbid the same conduct. The same principle holds for (2) and (3).

7. The statute provides, in pertinent part: "The Secretary shall make such investigations or inspections as he deems necessary to determine whether any dealer ... has violated or is violating any provision of this chapter or any regulation or standard issued thereunder, and for such purposes, the Secretary shall, at all reasonable times, have access to the places of business and the facilities, animals, and those records required to be kept pursuant to section 2140 of this title of any such dealer...." 7 U.S.C. § 2146 (1982).

The regulation provides, in pertinent part: "Each dealer ... shall, during business hours, allow APHIS officials: (1) To enter its place of business; (2) To examine records required to be kept by the Act and the regulations in this part; (3) To make copies of the records; (4) To inspect and photograph the facilities, property and animals...." 9 C.F.R. § 2.126.

8. This standard of review comes from the Administrative Procedure Act, 5 U.S.C. § 706(2)(E) (1988), which provides that agency actions, findings and conclusions in a case reviewed on the record of an agency hearing provided for by statute must be set aside if unsupported by substantial evidence. Section 2149 of the AWA requires a hearing before sanctions may be imposed. 7 U.S.C. § 2149 (1988).

## A. Willfulness

The Coxes argue first that the evidence is insufficient to sustain a finding of willfulness, which is required under § 558(c) of the Administrative Procedure Act before a suspension may be imposed. 5 U.S.C. § 558(c) (1988). Willfulness, as both parties point out in their briefs, includes not only intent to do a prohibited act but also careless disregard of statutory requirements. *Goodman v. Benson,* 286 F.2d 896, 900 (7th Cir.1961); *accord George Steinberg & Son, Inc. v. Butz,* 491 F.2d 988, 994 (2d Cir.), *cert. denied,* 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 55 (1974); *Arab Stock Yard, Inc.,* 37 Agric.Dec. 293, 306 (1978), *aff'd mem.* 582 F.2d 39 (5th Cir.1978); *see also Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 93 S.Ct. 1455, 1459 n. 5, 36 L.Ed.2d 142 (1973) (" 'Wilfully' could refer to either intentional conduct or conduct that was merely careless or negligent.").

■ The Coxes incorrectly assert that the willfulness of their violations of the AWA is a question of law to be reviewed de novo by this court. It is true that the definition of willfulness is a question of law to be reviewed de novo; however, that question is not before us. Nor are we to consider whether, as a matter of law, the Coxes' actions met that definition; rather, we must decide whether the evidence is legally sufficient, under the substantial evidence standard, to support the Department's finding that the violations were willful. There is ample evidence to support this finding. Refusing to permit inspection is obviously willful. The same goes for falsifying records. Of course, people write down the wrong date accidentally on occasion, but when it happens three times within a one-month period and when each time the change makes an illegal act appear legal, an inference of willfulness is justified. The Coxes argue that even if their

records were wrong, they themselves did not violate the AWA because the dates in the records were supplied and recorded by their employees. Section 2139 of the AWA, however, imputes the acts of employees to their employers.[9]

As for the holding violations, there is substantial evidence that they too were willful. The ALJ did not believe Becky Cox's testimony that she believed the information in the records to be accurate. The fact that the Coxes falsified records to cover up the holding period violations shows that they knew they had committed them and suggests that these violations were deliberate.

Finally, the Coxes contend that because they in good faith believed that the puppies were eight weeks old at the time of sale, they did not willfully violate the eight-week age minimum. The Coxes did not find out that the puppies were too young, they say, until they received the American Kennel Club papers showing the date of birth after the puppies had already been shipped. Ignorance is not a defense, especially when it is avoidable; the Coxes could have made sure they were complying with the law by waiting for the A.K.C. papers to arrive. *See James & Julia Stuekerjuergen,* 44 Agric.Dec. 186, 190 (1985) (dealers assumed the risk that the dogs might be underage when they sold them without waiting for the papers). Such careless disregard of statutory requirements constitutes willfulness. *See id.*

Finally, it should be pointed out that for a suspension to be authorized in this case, the only requirement is that at least one of the violations be willful. *See* 7 U.S.C. § 2149(a); 5 U.S.C. § 558(c).[10] The government need not show that all the violations were willful.

---

9. Section 2139 provides: "When construing or enforcing the provisions of this chapter, the act, omission, or failure of any person acting for or employed by ... a dealer ... shall be deemed the act, omission, or failure of such ... dealer ... as well as of such person." 7 U.S.C. § 2139 (1982).

10. Because § 2149(a) authorizes a suspension whenever a licensed dealer "has violated or is violating any provision" of the AWA or any regulation promulgated under it, a suspension could be imposed for a single willful violation of the AWA. The existence of additional violations not shown to be willful does nothing to take away that authorization.

### B. First Amendment

█ The Coxes next contend that they were punished for exercising their free speech rights: specifically, for their letter to APHIS, for the letters they sent to other dog breeders and pet store owners, and for Lee Cox's insulting remarks to the APHIS inspector. A reviewing court is required to set aside agency action, findings, and conclusions "contrary to constitutional right." 5 U.S.C. § 706(2)(B). Although questions of constitutional law are reviewed de novo, whether the Department's action was contrary to constitutional right depends on what its motivation was, which is a question of fact. At the administrative level, the Coxes pursued the theory that the Department was retaliating against them for speaking out, but the ALJ and JO were not convinced. We review their implicit finding that the Department's action was motivated by legitimate enforcement concerns under the same substantial evidence standard as other findings of fact.

The Coxes cite as evidence that the Department retaliated against them: (1) the ALJ's mention of Mr. Cox's abusive remarks to the APHIS inspector in his opinion, which was incorporated in the opinion of the JO; and (2) the testimony given at the hearing by two APHIS inspectors, who discussed the content and impact of the Coxes' mailings. One of them also recommended that a severe sanction be imposed.

We note first that APHIS did not begin investigating the Coxes because of their letters. APHIS had already received complaints and started investigating well before the first newsletter was sent out. Second, the sanctions imposed were fully justified by the Coxes' violations of the AWA. The Coxes have not shown that they were punished for what they said rather than for what they did. That the ALJ quoted Mr. Cox's abusive remarks to the APHIS inspector does not prove otherwise. The quotation serves to emphasize the willfulness of the Coxes' refusal to permit inspection. The Coxes say that the inspectors' testimony in essence advocated that the Coxes be punished for sending out newsletters and that the testimony shows the Department's desire to retaliate against the Coxes for their criticism of its personnel and methods. Rather, the testimony indicates the investigators' concern for the effective enforcement of the AWA. If, by refusing to allow inspections and publicly criticizing the Department, the Coxes could successfully defy the Department and get away with suspected AWA violations, other kennel owners would follow suit. In fact, one inspector testified that, after the letters and the Coxes' refusal to allow inspection, other dealers were being less cooperative, and some were calling APHIS to ask what was happening with Pixy Pals and why they themselves still had to follow the AWA regulations. Tr. I at 104–06. These circumstances are substantial evidence that the Department imposed sanctions to enforce the AWA, not to punish the Coxes for speaking out against the Department. Therefore, the Coxes' first amendment rights were not violated.

### C. Sanctions

█ Finally, the Coxes argue that the sanctions imposed on them are excessive. They claim that the $12,000 fine is not warranted by the factors enumerated in § 2149 of the AWA. These factors are: the size of the business; the gravity of the violation; the good faith of the violator; and the history of previous violations, if any. 7 U.S.C. § 2149(b) (1982). The Secretary is required to consider the appropriateness of the penalty with respect to these factors. *Id.* Consideration of the first and last factors is straightforward. Given the Coxes' $1 million gross income, a $12,000 fine is not inappropriate. On the other hand, they have no history of AWA violations.

The next factor to consider is the gravity of the violations. Although the violations do not involve cruelty to animals or unsanitary conditions, they are serious. Transporting dogs under eight weeks old endangers their health because their immune systems are not developed enough to withstand the stress of long-distance travel. Tr. I at 68. It also interferes with their psychological development and hence their ability to function when fully grown. *Stuekerjuergen*, 44 Agric.Dec. at 189. Failure to hold dogs for five days between

acquisition and sale also increases the likelihood that they will get sick, prevents proper health monitoring, and makes it more difficult to track down stolen dogs. Tr. I at 67–68, 118–19. In addition, the waiting period is necessary to make sure the dogs are healthy, especially if the dealer buys them from an unlicensed breeder. JO's Decision at 8; Tr. I at 67. Refusal to allow inspection is serious because it prevents detection of AWA violations. Falsification of records is serious by its very nature and because it makes enforcement of the AWA more difficult.

As to the remaining factor, the Coxes get no credit for good faith. They committed one violation of the AWA, falsifying records, to cover up another, failing to observe the statutory holding period. Their refusal to allow inspection of their premises and records was in defiance of the AWA. While they may not have known that the dogs they sold were underage, they did not bother to find out, despite the fact that they knew of the eight-week minimum age requirement.

We conclude that the sanctions imposed on the Coxes are appropriate in light of the factors set forth in § 2149(b).

■ The Coxes further argue that the punishment they received was excessive because it was disproportionate to that imposed in other AWA cases. It is true that the ninety-day suspension and $12,000 fine are relatively severe; however, the Coxes are not entitled to a sanction no more severe than that applied to others. *Spencer Livestock Comm'n Co. v. Department of Agric.*, 841 F.2d 1451, 1456 (9th Cir.1988); see *Glover*, 93 S.Ct. at 1459 ("The employment of a sanction within the authority of an administrative agency is ... not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases."). It is the Department's job, not ours, to fashion a remedy for violations of the AWA. Because assessing penalties is not a factual finding but the exercise of a discretionary grant of power, *Beall Constr. Co. v. Occupational Safety &*

*Health Review Comm'n*, 507 F.2d 1041, 1046 (8th Cir.1974), our review is limited to deciding whether, under the applicable statute and facts of the case, the agency made an allowable judgment, *Glover*, 93 S.Ct. at 1459. An agency's choice of sanction is not to be overturned unless it is unwarranted in law or without justification in fact. *Glover*, 93 S.Ct. at 1458; *Panhandle Coop. Ass'n v. EPA*, 771 F.2d 1149, 1152 (8th Cir.1985). Here, the sanctions imposed are not unwarranted in law; the statute authorizes suspensions and, at the time of the violations, allowed penalties of up to $1,000 per violation.[11] 7 U.S.C. § 2149 (1982). The Coxes were fined only about $300 per violation. Nor were the sanctions without justification in fact; there is substantial evidence showing that the Coxes willfully violated the AWA.

### III.

Because we find that there was substantial evidence to support the Department of Agriculture's finding that the Coxes' violations of the AWA were willful, that the Coxes were not punished for exercising their first amendment right of free speech, and that the sanctions imposed on them were within the discretion of the Department, we affirm.

---

**11.** The statute has since been changed to permit a penalty of up to $2,500 per violation. 7 U.S.C.

