12 F.3d 1102
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
Kenneth S. BENIGNI, Appellant,
v.
Donald W. MAAS; John F. Kirchberg; Dennis Munson; P. M.
Eppele, Appellees.
 No. 93-2134.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: November 1, 1993.
Filed: December 8, 1993.
 
 Appeal from the United States District Court for the District of Minnesota.
 Before JOHN R. GIBSON, MAGILL, and BEAM, Circuit Judges.
 PER CURIAM.
 
 
 1
 Kenneth Benigni appeals the district court's[1] dismissal of his Federal Tort Claims Act (FTCA) cause of action and his Bivens claim. We affirm.
 
 
 2
 From 1973 to June 26, 1986, Benigni was a licensed animal vendor, pursuant to the Animal Welfare Act (AWA), 7 U.S.C. Sec. 2131, et. seq. On June 3, 1986, Benigni notified the Animal and Plant Health Inspection Service (APHIS) that he wanted to convert his Class B "dealer" license to a Class C "exhibitor" license, and sent the $10 application fee for a Class C license. APHIS renewed Benigni's Class B license until June 26, 1987. On August 20, 1986, APHIS officials inspected his operation. Benigni was told that he did not qualify for a Class C license. The inspectors returned Benigni's Class C application fee and told Benigni that he would have to pay the $5 renewal fee for his Class B license.
 
 
 3
 Shortly thereafter, Benigni left Minnesota for Ohio and left the care of his animals to his neighbors. On December 3, 1986, defendants Maas, Kirchberg, and Munson, all APHIS employees, inspected Benigni's farm and posted a list of deficiencies on his front door. Follow-up inspections occurred on December 4, 5, and 10, 1986. On February 3, 1987, Benigni wrote a letter to defendant Eppele, APHIS Veterinarian in Charge, expressing his discontent with APHIS inspecting his property in his absence and expressly requesting that APHIS void his license. Eppele terminated Benigni's license on February 10, 1987.
 
 
 4
 Benigni, pro se, brought this Bivens action for alleged violations of his Fourth Amendment rights, along with tort claims stemming from the December 1986 inspections. Over Benigni's objections, the district court adopted the magistrate judge's[2] lengthy and thorough report and granted the defendants' motion to dismiss. After Benigni's motion to vacate or amend the district court's order was denied, he timely appealed.
 
 
 5
 Benigni contends that the district court erred in finding that he was a dealer and thus subject to the AWA because he did not meet the transactional requirements of a "dealer"; his 1985 license was not renewed; he rejected his 1986 Class B license; and he never paid his 1986 Class B license renewal fee and, therefore, his license automatically terminated before the searches occurred. It is undisputed that Benigni had not derived more than $500 in animal sales in 1985 or 1986. See 9 C.F.R. Sec. 1.1(t) (1986). The regulations in effect in 1986, however, allowed individuals to be licensed under the AWA even if they did not meet the technical requirements of a dealer or an exhibitor. See 9 C.F.R. Sec. 2.1(b) (1986). Also, Benigni fails to acknowledge that he sought a renewal of his Class B license and that this license was renewed from June 26, 1986, to June 27, 1987. The status of his 1985 license is immaterial. Benigni's claim that he terminated his Class B license is unfounded. His August 18, 1986 letter to APHIS does not clearly convey a desire to terminate his Class B license. Further, on August 20, 1986, APHIS inspectors told Benigni that he need not be licensed under the AWA at all. Benigni, however, refused to surrender his Class B license.
 
 
 6
 Benigni contends that even if he had a Class B license, it expired after he failed to pay the renewal fee. Benigni relies on 9 C.F.R. Sec. 2.5(b) (1986) for support that his 1986 Class B license terminated prior to the December searches. Section 2.5(b) states that a failure to pay the renewal fee will automatically terminate a license sixty days after the licensee receives notice and an opportunity to comply. 9 C.F.R. Sec. 2.5(b) (1986). Benigni contends that he received notice during the August 20, 1986 inspection of his premises and that his license, therefore, terminated around October 20, 1986, because of his failure to pay the renewal fee. The district court determined that Benigni received notice on December 3, 1986, when the defendants posted a list of deficiencies on Benigni's door. The Administrative Procedure Act requires that a licensee receive written notice and an opportunity to achieve compliance before a license can be revoked or suspended. 5 U.S.C. Sec. 558(c) (emphasis added); cf. Cox v. United States Dep't of Agric., 925 F.2d 1102, 1104 n.8, 1105 (8th Cir. 1991) (applying the APA to an AWA case), cert. denied, 112 S. Ct. 178 (1991). Notice in this context must be in writing; the August 20, 1986 conversation did not suffice. The district court correctly determined that Benigni was a licensed dealer and thus subject to the AWA.
 
 
 7
 Benigni next asserts that the district court erred in finding that the AWA authorizes warrantless searches of dealers. Warrantless administrative searches are permissible when the business is closely regulated and the regulatory rules limit the scope of the search. New York v. Burger, 482 U.S. 691, 702-03 (1987); Western States Cattle Co. v. Edwards, 895 F.2d 438, 441 (8th Cir. 1990). Warrantless administrative searches are only reasonable when three criteria are met: (1) the administrative scheme concerns a substantial government interest; (2) the warrantless search is necessary to further the regulatory scheme; and (3) the rules governing the inspection offer a constitutionally adequate substitute for the Fourth Amendment warrant requirement by limiting the time, place, and scope of the search. Burger, 482 U.S. at 702-03. The district court applied the Burger criteria and found that AWA warrantless administrative searches were reasonable and not in violation of the Fourth Amendment. Upon de novo review, we find the district court was correct.
 
 
 8
 The AWA addresses a substantial government interest. See 7 U.S.C. Sec. 2131(1). Congress recognized the need for federal legislation because abuse of animals occurs nationwide and state laws are ineffective in preventing the abuse. S. Rep. No. 1281, 89th Cong., 2d Sess. (1966), reprinted in 1966 U.S.C.C.A.N. 2636-37. The Supreme Court has upheld as a substantial government interest similar purposes advanced in other statutory schemes. Cf. Donovan v. Dewey, 452 U.S. 594, 602 (1981) (substantial federal interest in improving safety of nation's mines); United States v. Biswell, 406 U.S. 311, 315 (1972) (regulating firearms of central importance to federal efforts to prevent violent crime and to assist states in regulating firearms).
 
 
 9
 In Burger, the Supreme Court found warrantless administrative inspections of automobile junkyards necessary to further the regulatory scheme. The Court stated that "because stolen cars and parts pass quickly through an automobile junkyard, 'frequent' and 'unannounced' inspections are necessary in order to detect them. In sum, surprise is crucial...." Burger, 482 U.S. at 710. Likewise, surprise inspections are crucial to detect violations of the AWA which can be covered up quickly. See Biswell, 406 U.S. at 316; Cox, 925 F.2d at 1107 (refusal to allow inspection prevents detection of AWA violations). The need for a warrant could frustrate the purposes of the AWA.
 
 
 10
 The statutory scheme must be sufficiently comprehensive and defined that owners of commercial property are aware that their property will be subject to periodic inspections. Burger, 482 U.S. at 691. The AWA expressly authorizes administrative inspections. See 7 U.S.C. Sec. 2146(a). In addition, regulations promulgated by the Secretary allow for inspections. See 9 C.F.R. Sec. 2.126 (1986). Each applicant for a license or a renewal of a license must acknowledge receipt of a copy of the regulations and agree to comply with them. See 9 C.F.R. Sec. 2.2. It is inconceivable that a licensed dealer would have any doubt about being subject to routine and regular compliance inspections. In summary, after review of the Burger requirements, we hold that the AWA authorizes warrantless administrative inspections.
 
 
 11
 Finally, Benigni argues that the searches were illegal because they were conducted in his absence. As discussed above, individuals licensed under the AWA cannot help but be aware that their property will be inspected. Agreeing to the extensive regulations by becoming licensed is deemed to be consent to administrative inspections. Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978). In addition, notice of future inspections is also given by the statute itself and the signing of the agreement to abide by the statute and regulations. Western States Cattle, 895 F.2d at 442 n.4; see also 9 C.F.R. Sec. 2.2 (1986) (acknowledgement of standards). As Benigni gave consent to, and received notice of, future inspections, his actual presence was immaterial.
 
 
 12
 FTCA claims against the government must be presented to the appropriate federal agency within two years after the claims accrue. 28 U.S.C. Secs. 2401(b), 2675(a). Benigni failed to exhaust his administrative remedies because he never presented his claims to any federal agency. As Benigni has demonstrated no grounds for equitable tolling, the district court correctly determined that it was without subject matter jurisdiction. See Niccolai v. United States Bureau of Prisons, No. 92-3021, 1993 WL 347119, * 2 (8th Cir. Sept. 15, 1993). We, therefore, need not address the issue of deference to the certification of scope of employment, the malicious prosecution claim, or the contamination claim.
 
 
 13
 Finally, the district court did not abuse its discretion in denying Benigni's motion to alter or amend the judgment. See Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993).
 
 
 14
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota
 
 
 [2]
 The Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota