**Richard Eugene ABBOTT, Appellee,**

v.

**CITY OF CROCKER, MISSOURI; James Stone, Appellants.**

No. 93–2639.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1994.

Decided July 27, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 20, 1994.

Frank M. Evans, Springfield, MO, argued (Mark A. Powell, on the brief), for appellant.

H. Ralph Gaw, Tipton, MO, argued (James F. Crews and Mary Kay Sommer Lutz, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and STOHR,* District Judge.

* The HONORABLE DONALD J. STOHR, United States District Judge for the Eastern District of Missouri, sitting by designation.

STOHR, District Judge.

Appellee brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights by the appellant police officer's use of excessive force and unauthorized arrest of appellee. The events underlying this action begin in the parking lot of Andy's Short Stop, a gas station-convenience store in Crocker, Missouri, on the night of August 15, 1990. At approximately 11:00 p.m., appellant Crocker Police Officer Stone saw appellee Abbott driving a red Ford pickup truck through the parking lot. Having earlier seen the same truck driving fast and squealing its tires in the parking lot, Stone pulled his car alongside the truck and asked Abbott to pull back into the lot so that Stone could talk to him about the earlier incident. Contradictory evidence was adduced at trial concerning the tenor of the conversation and which of the parties was hostile and belligerent during it.

Officer Stone testified that during the conversation he concluded that Abbott was intoxicated. Abbott refused to back up into the parking lot as requested, and ultimately sped out of the lot. Stone pursued Abbott's truck down a nearby gravel road; Stone testified that he used his lights and siren during this pursuit, whereas Abbott testified to the contrary. Knowing he was leaving Crocker, Stone radioed the Pulaski County Sheriff's Department to request assistance; the mayor of Crocker testified at trial that ordinarily only one Crocker police officer is on duty at any given time. Evidence at trial also indicated that Stone had been told by the Crocker Chief of Police that he could pursue vehicles outside the city limits so long as he radioed the county, and that historically that had been the policy and practice of the Crocker Police Department and Officer Stone. The parties dispute whether in this instance Stone asked the County Sheriff's Department for permission to pursue appellee beyond the Crocker city limits.

Stone followed Abbott to the home of Randy and Kathy Duncan. After several requests, Abbott came out of the house and followed Stone to his patrol car, where Stone put away his shotgun and spoke to the county on the radio. Stone contends that he then told Abbott he was under arrest, and that when Stone touched Abbott's arm, Abbott stated that he was not going with Stone and jerked away. Stone, who testified that he thought Abbott was "getting ready to hit [him]," then hit Abbott with his flashlight. Abbott fell to the ground. Stone testified that as he tried to handcuff Abbott, the latter began struggling to reach into his pocket; Stone further testified that because he thought Abbott might have been reaching for a gun or knife, he then struck him a second time with his flashlight. Stone testified that he hit Abbott only these two times. Abbott's evidence suggested that both of these blows were to the head and that Stone hit Abbott twice more after Abbott was on the ground. A county deputy sheriff arrived and helped Stone handcuff Abbott and place him in the patrol car. Abbott was later treated and released by the Phelps County Regional Medical Center. Deposition testimony of Crocker's then-Police Chief, Daniel Plemmons, which was read at trial, indicated that both the written policy and oral instructions given to Crocker police officers concerning use of force merely directed them to use such force as is necessary in a given situation.

At the close of all the evidence, the district judge directed a verdict [1] in Abbott's favor on his claims that Officer Stone violated his constitutional rights by pursuing him beyond Crocker's city limits for the purpose of arresting him and by striking him with a flashlight and on his claims that the appellant City violated Abbott's constitutional rights by its inadequate training of its police officers on the use of force and by allowing them to go outside the city limits to make arrests. The question of damages was submitted to the jury, which returned a verdict awarding Abbott a total of $22,000 in actual damages against both appellants and $100,000 in punitive damages against Officer Stone. The trial court later awarded Abbott attorney's fees in the amount of $44,395.56.

---

1. Under the 1991 amendments to Fed.R.Civ.P. 50, the trial court is properly said to have grant-  ed judgment as a matter of law ("JAML") as to liability.

■ The first issue on appeal is whether the trial court erred in granting JAML in Abbott's favor because the evidence was sufficient to raise a submissible question as to Officer Stone's liability for the arrest and his use of force, and because the evidence was sufficient to raise a submissible question as to the City's deliberate indifference to the training of its police officers and its knowledge that the training was inadequate. For purposes of analysis, Abbott actually asserts four separate claims: a Fourth Amendment excessive force claim against Officer Stone, a Fourth Amendment claim against Officer Stone concerning the allegedly invalid arrest, a failure to train claim against the City concerning use of force, and a failure to train claim against the City concerning the limits of its officers' authority to pursue suspects and effect arrests. These analytical distinctions were not employed below.

■ This Court reviews judgment as a matter of law using the same standard as the district court. *See Nolte v. Pearson,* 994 F.2d 1311, 1315 (8th Cir.1993). Judgment as a matter of law is appropriate only where the nonmoving party has presented insufficient evidence to support a jury verdict in his or her favor, and this is judged by viewing the evidence in the light most favorable to the nonmoving party and giving him or her the benefit of all reasonable inferences from the evidence, but without assessing credibility. *Id.* In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that excessive force claims concerning arrest or investigatory stops are analyzed under a Fourth Amendment "objective reasonableness" standard. The constitutionality of such a use of force is to be determined by its reasonableness "judged from the perspective of a reasonable officer on the scene," upon consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting

arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. at 1872.

The summary of the evidence above reveals a number of points on which there was adduced contradictory evidence concerning the facts of Abbott's and Stone's behavior and the circumstances surrounding the use of force. Applying the applicable standards, this Court concludes that the trial court erred in granting Abbott judgment as a matter of law, because, without impermissible determinations of credibility, Stone could not be said to have failed to present evidence which might have supported a jury verdict in his favor. The district judge may have reasoned that, because he found the arrest invalid as a matter of law, *any* use of force in effecting it violated Abbott's fourth amendment rights; as previously indicated, however, the two claims are not analytically interdependent in that way.

■ As for the validity of the arrest, appellants appear to concede that under Missouri law, an officer of a fourth class city has no authority to effect an arrest outside the city limits for a municipal ordinance violation or traffic offense. *See, e.g., Kimber v. Director of Revenue,* 817 S.W.2d 627, 631 (Mo. App.1991). From this premise, both appellee and the court below have concluded, without elaboration, that the arrest invalid under state law necessarily violates the Fourth Amendment as well.[2] The Fourth Amendment prohibits "unreasonable" seizures of the person, but not every unauthorized arrest is "unreasonable" in the constitutional sense. The Supreme Court has long observed the distinction between compliance with state law and constitutional principles:

> But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, *so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.*

---

2. The Court notes, however, its agreement with the district court's rejection, as a matter of law, of the "mutual aid agreement" between the City

and Pulaski County as authority for the arrest under state law.

**998**

*Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967) (emphasis added). In analyzing a § 1983 claim involving a Missouri Highway Patrolman whose use of deadly force was not authorized under Patrol policy, this Court has stated:

> We need not determine whether Trooper Rice violated Missouri Highway Patrol policy, however, for under section 1983 the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency. *Conduct by a government official that violates some state statutory or administrative provision is not necessarily constitutionally unreasonable.*

*Cole v. Bone,* 993 F.2d 1328, 1334 (8th Cir. 1993) (emphasis added).

A very recent decision of this Court contained similar language: "A police violation of state law does not establish a Fourth Amendment violation. However, the question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes." *United States v. Baker,* 16 F.3d 854, 856 n. 1 (8th Cir.1994). Even more recently, again in the federal criminal context, a panel of this Court applied the oft-noted rule that " 'evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because *state* law was violated.' " *United States v. Bieri,* 21 F.3d 811, 816 (8th Cir.1994), quoting *United States v. Moore,* 956 F.2d 843, 847 (8th Cir.1992) (emphasis in original). *See also Griffin v. Wisconsin,* 483 U.S. 868, 880 n. 8, 107 S.Ct. 3164, 3172 n. 8, 97 L.Ed.2d 709 (1987); *United States v. Eng,* 753 F.2d 683, 686 (8th Cir. 1985). The distinction at issue here has also been observed in comments by the Supreme Court concerning the freedom of the states to develop "workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation

and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures," which freedom "implies no derogation of uniformity in applying federal constitutional guarantees but is only a recognition that conditions and circumstances vary just as do investigative and enforcement techniques." *Ker v. California,* 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963). *See also Sibron v. New York,* 392 U.S. 40, 60–61, 88 S.Ct. 1889, 901–02, 20 L.Ed.2d 917 (1968).

Guided by these authorities, the Court concludes that the district court erred in determining, as a matter of law, that the arrest in violation of state law necessarily also constituted a violation of the Fourth Amendment.[3] With respect to this aspect of appellee's claims against Stone as well, then, the court below erred in granting appellee JAML, and the jury should have been allowed to determine whether the arrest was objectively reasonable under all the circumstances, including the fact that the officer lacked authority under state law to make the arrest.

■ The City cannot be liable in connection with either the excessive force claim or the invalid arrest claim, whether on a failure to train theory or a municipal custom or policy theory, unless Officer Stone is found liable on the underlying substantive claim. *See Reynolds v. City of Little Rock,* 893 F.2d 1004, 1007 (8th Cir.1990), quoting *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). For this reason, where appellee was not entitled to JAML against the police officer, the grant of JAML against the City was also erroneous.

■ Furthermore, as to the City's liability, the Supreme Court has stated the standards applicable to a failure to train claim as follows:

---

**3.** The Court wishes to acknowledge, however, the existence of some inconsistency in the rulings of this Circuit on this issue. *See, e.g. Bissonette v. Haig,* 800 F.2d 812, 816 (8th Cir.1986), [Although "[a] search authorized by state law could still be constitutionally invalid, ... a search unauthorized by state law would *ipso facto* violate the Fourth Amendment."]; *Cole v. Nebraska State Board of Parole,* 997 F.2d 442, 444 (8th Cir.1993) ["An arrest by a state actor that is not authorized by state law is actionable under § 1983 as a seizure contrary to the Fourth Amendment." (citing *Bissonette*)]; *Brock v. Logan County Sheriff's Department of Arkansas,* 3 F.3d 1215, 1216 (8th Cir.1993) (per curiam) (citing *Bissonette* and *Cole*).

[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact ... Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983 ... Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.

*City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–389, 391, 109 S.Ct. 1197, 1205, 1206, 103 L.Ed.2d 412 (1989). As with the underlying substantive claim, the district court and appellee appear to have concluded that the Crocker Police Department's operation under a mistaken belief concerning its authority outside the city limits is *per se* a constitutional violation. The record contains no indication that the court below recognized that the *City of Canton* standards apply to analysis of Abbott's failure to train claims; to the contrary, the court's May 25, 1993 order concerning the motions for new trial cites and discusses only state law on this issue. Given the determination that liability on each of appellee's claims was erroneously determined as a matter of law, the case will be remanded for a new trial, in accordance with this opinion.

█ The next issue raised on appeal is whether the trial court erred in disallowing expert testimony to the effect that it was reasonable for Officer Stone to believe, based on instructions received from the police chief, that he could go outside the city limits to effect an arrest. At trial, appellants made an offer of proof as to testimony that could be elicited from Abbott's own expert concerning the reasonableness of Officer Stone's belief in his authority to pursue and arrest Abbott outside the city limits. The expert, a Dr. Holden, teaches law enforcement and trains law enforcement officers. To the extent appellants offered this proof on the issue of qualified immunity, it was not admissible at trial because qualified immunity is an issue of law for the Court to determine prior to trial. *See, e.g., Arnott v. Mataya,* 995 F.2d 121, 123

(8th Cir.1993). In light of the remand of the case for new trial, a determination whether the trial court abused its discretion in excluding the testimony is no longer necessary.

The two remaining issues on appeal concern punitive damages, and do not require extensive consideration given the Court's previous determinations. The Court notes, however, that the district court gave a correct instruction concerning punitive damages and rightly recognized that punitive damages are not available under § 1983 against the City itself.

For the reasons stated above, the district court's grant of judgment as a matter of law as to liability is reversed and its final judgment vacated, and the case is remanded for a new trial.

RICHARD S. ARNOLD, Chief Judge, concurring in part and dissenting in part.

The Court holds that the District Court erred in determining as a matter of law that the arrest of Abbott by Officer Stone in violation of state law necessarily also constituted a violation of the Fourth Amendment. Although I concur in the Court's other holdings, I dissent on this point. I agree with the Court's statement that a violation of state law does not automatically create a cause of action under Section 1983, but I believe that the violation of some state laws can amount to an infringement of the Fourth Amendment. Further, I believe that this issue is one of law for the court to decide.

The Court holds that the District Court erred when it granted judgement as a matter of law for the plaintiffs in this case. In making its determination, the Court reviews several Fourth Amendment cases. These cases state generally that violations of state law do not establish a Fourth Amendment violation, but may be relevant in determining whether the conduct in question was reasonable under the Fourth Amendment. *Ante,* at 998. Without considering the nature of the violation in this case, or the purpose of the state law at issue, the Court instead draws the conclusion that this violation of state law, Stone's arrest of Abbott without authority, did not as a matter of law violate Abbott's

Fourth Amendment right to be free of unreasonable searches and seizures. Then the Court states that "the jury should have been allowed to determine whether the arrest was objectively reasonable under all the circumstances, including the fact that the officer lacked authority under state law to make the arrest." *Ante*, at 998. I respectfully disagree.

The key issue in determining whether a violation of state law constitutes a violation of the Fourth Amendment, in the context of an arrest, is whether the statute in question is designed to protect individuals from police behavior that would otherwise be unreasonable. In *United States v. Baker*, 16 F.3d 854, 856 n. 1 (8th Cir.1994), a recent case quoted by the Court, we said that "[a] violation of state law does not establish a Fourth Amendment violation. However, the question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes." Thus, even though a violation of state law in the course of an arrest is not a per se constitutional violation, it can be "unreasonable" under the Fourth Amendment, depending on the nature of the violation. See also *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir.1993).

This analysis is consistent with the law of this Circuit. For example, in *Bissonette v. Haig*, 800 F.2d 812, 816 (8th Cir.1986) (en banc), *aff'd by operation of law*, 485 U.S. 264, 108 S.Ct. 1253, 99 L.Ed.2d 288 (1988), this Court held that the use of military personnel to enforce domestic law, which use was contrary to a federal statute, violated the Fourth Amendment. In so holding, we looked to the federal statute in question and determined that the policy of the statute involved was so important that the seizure violated the Fourth Amendment. I think that the same result is dictated by the facts of this case.

Here, both parties agree that the officer lacked the statutory jurisdiction to arrest. Applying the premise stated above, we must look to the nature of the statute Officer Stone violated. Thus, before holding the arrest to be unreasonable, we must consider the policies and interests underlying the statutory prohibition of such arrests. See *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Perhaps the most important reason why a state might limit the jurisdiction of city and town officers to their respective communities is that smaller communities are unlikely to have the resources to provide their officers with proper training in the elements of probable cause or arrest procedures. By limiting an officer's jurisdiction to the community in which she serves, a state helps to ensure not only that the power of the police over individuals will be appropriately restricted, but also that an officer will be sufficiently trained for the types of arrests likely to occur in her community. This type of restriction helps to protect the very interests underlying the Fourth Amendment, those of the individual in privacy and personal freedom, and, at the same time, balances the interests of government in protecting society and making arrests in a safe, efficient, and constitutional manner. For these reasons, I would hold that the violation of state law in this case made the arrest unreasonable under the Fourth Amendment. See *Brock v. Logan County Sheriff's Department*, 3 F.3d 1215, 1216 (8th Cir.1993); *Cole v. Nebraska State Board of Parole*, 997 F.2d 442, 444 (8th Cir.1993).

I also disagree with the Court's decision to allow the jury to determine, under all the circumstances, whether Stone's illegal arrest of Abbott was objectively reasonable. The District Court apparently is to tell the jury that Stone violated Missouri law, and then let it determine whether this behavior crosses the bounds of constitutionality. We are not told what other factors the jury is to consider, or what definition (if any) of reasonableness it is to be given. I believe that whether the state-law violation is also a violation of the Fourth Amendment is a question of law to be determined by the court. Compare *Thompson v. Reuting*, 968 F.2d 756 (8th Cir.1992) (holding that when the parties do not dispute any material facts, the issue of whether a police officer had a reasonable articulable suspicion for stopping an individual is a question of law); *Hoffmann v. Mayor, Councilmen & Citizens of Liberty*, 905 F.2d 229 (8th Cir.1990) (noting that whether an employee's speech was entitled to First

Amendment protection was a question of law for the court).

Although I disagree with the District Court's holding that the violation of a state statute is always a constitutional violation, I agree with its result on this issue. Because Stone's arrest of Abbott was illegal under Missouri law, and because, in my view, the violation of this particular state statute violated Abbott's constitutional rights, I would affirm the District Court's grant of judgment as a matter of law to Abbott on this issue.