**Therese HORN, et al., Plaintiffs,**

v.

**CITY OF SEAT PLEASANT, Maryland, et al., Defendants.**

**No. CIV. A. AW 98–1591.**

United States District Court, D. Maryland, Southern Division.

July 20, 1999.

---

Richard L. Jaklitsch, Upper Marlboro, MD, for plaintiffs.

Daniel Karp, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

### I.

Presently before the Court is Defendants' Motion for Summary Judgment. A hearing was held on this motion. In ruling on the motion, the Court has considered the briefs of the parties, the arguments of counsel at the hearing in open court, and the entire record. For the reasons that will follow the Court will grant in part and deny in part Defendants' motion.

### II.

Plaintiffs, Therese and John Horn, originally filed this suit in the Circuit Court for Prince George's County, seeking damages which they claim arose from an April 24, 1997 incident. Defendants are the City of

Seat Pleasant, Maryland ("Seat Pleasant"), and Officer John Morris ("Officer Morris"), a Seat Pleasant police officer. Plaintiffs allege that on April 24, 1997, around 11:00 a.m., Therese Horn ("Mrs.Horn") was traveling northbound on Route 301 near Bowie, Maryland when she noticed a "dark-colored vehicle keeping pace beside" her. Answer to Interrogatory No. 3. She claims that eventually the car got behind her and began to follow her. She stated that "[t]he dark colored vehicle began flashing a light on its dash while the driver held something in his windshield." *Id.* Because she doubted that the driver was a police officer, and because she was on a "desolate part of Rt. [sic] 301," she did not pull over. *Id.* She alleges that when she reached a traffic light near a service station, the driver of the vehicle came to the side of her car, wearing a uniform which she did not recognize. When he asked for her driver's license and registration, she told him that he needed to call the Prince George's County Police. She alleges that he replied " 'I already did', in an angry tone." *Id.* She alleges that she pulled into the service station and attempted to make a phone call to a day-care provider. She states that, in return, the driver of the vehicle started walking towards her "with his hand on his weapon," yelling for her to return to her car. *Id.* She claims that she returned to the car, rolled up her windows, and stayed there until the Police George's County Police arrived.

The first Prince George's County Police Officers to arrive at the scene were in an unmarked car, and were wearing civilian clothes. However, Plaintiff knew the lieutenant who was in that car, and was cooperative with him. The lieutenant brought Mrs. Horn's license and registration to Officer Morris. Then a marked Prince George's County Police car arrived.

Officer Morris told the Prince George's County Police officers that he was issuing Mrs. Horn a citation for speeding. In his deposition, Officer Morris stated that he had paced her speed at around 75 miles an hour in a 55 speed zone. Morris claimed that he pulled along side her to tell her to slow down, but she would not make eye contact with him. At his request, a uniform Prince George's County Police Officer stood by Officer Morris while he gave the ticket to Mrs. Horn. Mrs. Horn claims that when he gave her the ticket he said to her, "I am a real police officer giving you a real ticket." Answer to Interrogatory No. 3.

In his deposition, Officer Morris testified that a few days later he was told that Mrs. Horn was the sister and sister-in-law of Prince George's County Police officers, and that Mrs. Horn had been raped by someone who posed as a police officer before this incident occurred. He tried to void the ticket, and did not appear in court on the traffic charges.

The basic gist of Plaintiffs claims is that Officer Morris had no authority to stop Mrs. Horn because he was not within the City of Seat Pleasant, but was at least five miles outside of his jurisdiction. Plaintiffs allege that this incident has traumatized Therese Horn, and thus affected John Horn, because of her previous rape. Plaintiffs have filed a twenty-eight count Complaint stemming from this event. Plaintiff concedes that summary judgment on behalf of the Defendants should be granted on counts 1, 2, 15, and 16, the negligence, and negligent infliction of emotional distress counts, and counts 7 and 8, the battery counts. Most of the other counts are claims against Officer Morris directly, and claims based on the theory of respondeat superior against Seat Pleasant. These dual counts include abuse of process, assault, defamation, false imprisonment, intentional infliction of emotional distress, invasion of privacy by false light, invasion of privacy by intrusion upon seclusion, and malicious prosecution. Plaintiffs also have brought claims of 42 U.S.C. § 1983 violations against the Defendants, on the basis of unlawful detention and malicious prosecution as to Officer Morris, and on the basis of unconstitutional poli-

cies and procedures as to Seat Pleasant. Plaintiffs' other claims, brought against both Defendants, include allegations of violations of the Maryland Declaration of Rights, and loss of consortium.

Because Plaintiffs had asserted federal claims, Defendants properly removed the case from the Circuit Court for Prince George's County to this Court on May 19, 1998. Defendants now move for summary judgment on all counts.

## III.

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed and all justifiable inferences drawn in her favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

Defendants maintain that Plaintiffs' federal claims brought pursuant to 42 U.S.C. § 1983 are subject to summary judgment because Officer Morris did not violate a clearly established right of Mrs. Horn. According to Defendants, Plaintiffs are asserting a federal right to not be stopped by an officer outside of his jurisdiction. Defendants claim that, at most, the fact that Officer Morris acted outside of his jurisdiction would be a violation of Md. Ann.Code of 1957, Article 27, § 594B, which states that police officers cannot use that subsection to enforce the provisions of the Maryland Vehicle Law outside of their jurisdiction.[1]

■ Defendants state that even if Plaintiffs could establish a constitutional right not to be stopped by a police officer outside of his jurisdiction, Officer Morris would be protected by the doctrine of qualified immunity. The Fourth Circuit Court of Appeals has recently stated that "[i]t is a well settled proposition that government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *S.P. v. City of Takoma Park*, 134 F.3d 260, 265 (4th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Further, "[w]hen determining whether law enforcement officers are entitled to qualified immunity," the Court must "(1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable [official] would have understood that the conduct at issue violated the clearly established right." *Id.* "'If the right was not clearly established at the relevant time or if a reasonable [official] might not have known that his or her conduct violated that right, the [official] is entitled to immunity.'" *Id.* (citing *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir.1996)).

Although Defendants try to frame the right in terms of the conduct, the right

---

1. Section 594B states:
    Arrests without warrants generally....
    (m) (2)(ii) Under this subsection a police officer may not enforce the provisions of the Maryland Vehicle Law beyond the officer's sworn jurisdiction.

relied upon by Plaintiffs' is a clearly established right: the right not to be subjected to unreasonable searches and seizures established by the Fourth Amendment of the United States Constitution. Thus the true questions are whether Defendants' conduct violated that right, and whether a reasonable official in Officer Morris' place, would have understood that this conduct violated the right.

"The law is clearly established such that an [official's] conduct transgresses a bright line when the law has 'been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.'" *Wilson v. Layne, et al.*, 141 F.3d 111, 114 (4th Cir. 1998) (citing *Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir.1980)). Independent research by the Court revealed that there are no cases from the Supreme Court of the United States, the Fourth Circuit, or the Court of Appeals of Maryland, which directly discuss whether a traffic stop conducted by a police officer outside of his jurisdiction, in violation of a state statute, necessarily violates the Fourth Amendment. Moreover, the circuits which have addressed the issue of whether an arrest in violation of state law violated a federal right have produced cases with differing results.

The Tenth Circuit has held that such conduct is a per se constitutional violation in *Ross v. Neff*, 905 F.2d 1349, 1353–54 (10th Cir.1990). In *Ross*, plaintiff brought an action pursuant to Section 1983 asserting that his Fourth Amendment rights had been violated because he was arrested by Oklahoma peace officers who had no jurisdiction in Indian country. The district court directed a verdict in favor of the defendants. On appeal, Tenth Circuit first found that the district court had erred in deciding that the officers had jurisdiction over the territory. The Court then turned to the question of whether the fact that the arrest had occurred outside of the officer's jurisdiction had any constitutional implications. The Tenth Circuit stated:

We have implied that an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment to the Constitution and is therefore actionable pursuant to 42 U.S.C. § 1983 under the appropriate circumstances . . . . We now so hold expressly. A warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause. . . . Absent exigent circumstances, such an arrest is presumptively unreasonable.

*Id.* at 1353–54. The Court found that qualified immunity applied, however, because the police officers in that case could not have known that they were violating the constitutional rights of the plaintiff because "[a]t the time Ross was arrested, the law regarding the jurisdiction of local police officers on Indian Tribal Trust land in Oklahoma was not clearly established." *Id.* at 1354.

The Eighth Circuit, on the other hand, has found that such conduct is not a per se violation. *Abbott v. City of Crocker, Missouri*, 30 F.3d 994 (8th Cir.1994). In *Abbott*, a motorist brought an action pursuant to Section 1983 alleging that his Fourth and Fourteenth Amendment rights had been violated by a "police officer's use of excessive force and [his] unauthorized arrest." *Id.* at 996. The police officer had encountered the motorist at a gas-station-convenience store. He had tried to ask the motorist about an earlier incident in which he witnessed the motorist driving his truck very fast and "squealing its tires in the parking lot." *Id.* The facts about the tenor and tone of the conversation at the gas-station were in dispute. What was not in dispute, however, was the fact that the police officer pursued the motorist and arrested him outside of the city limits in which he had jurisdiction.

The defendants in *Abbott*, "conceded that under Missouri law an officer of a fourth class city has no authority to effect an arrest outside the city limits for a municipal ordinance violation or traffic of-

fense." *Id.* at 997. The district court held that the arrest as it was invalid under state law necessarily violated the Fourth Amendment. The Eighth Circuit held, however, that "[t]he Fourth Amendment prohibits 'unreasonable' seizures of the person, but not every unauthorized arrest is unreasonable in the constitutional sense." *Id.* The Court concluded that the district court had erred in determining that the arrest was unconstitutional as a matter of law because it violated state law. *Id.* at 998. The Court stated that the "jury should have been allowed to determine whether the arrest was objectively reasonable under all the circumstances, including the fact that the officer lacked authority under state law to make the arrest." *Id.* See also *United States v. Baker,* 16 F.3d 854, 856 n. 1 (8th Cir.1994) ("A police violation of state law does not establish a Fourth Amendment violation. However, the question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes."); *Madsen v. Park City,* 6 F.Supp.2d 938, 945 (N.D.Ill.1998) ("But even if, under state law, [the officer] had lacked authority to stop plaintiff and issue a citation ... that by itself would be an insufficient basis for liability under 42 U.S.C. § 1983. The arrest would only violate the Constitution if it was without probable cause or defendant violated some other constitutional prohibition."). *But see Cole v. Nebraska State Bd. of Parole,* 997 F.2d 442, 444 (8th Cir. 1993) ("An arrest by a state actor that is not authorized by state law is actionable under § 1983 as a seizure contrary to the Fourth Amendment."); *Bissonette, et al. v. Haig, et al.,* 800 F.2d 812, 816 (8th Cir. 1986) ("A search authorized by state law could still be constitutionally invalid ..., but a search unauthorized by state law

would ipso facto violate the Fourth Amendment.")[2]

The Fourth Circuit case most directly in point is *Street v. Surdyka,* 492 F.2d 368 (4th Cir.1974). In that case, the plaintiff brought suit pursuant to Section 1983 against a Baltimore police officer and two police cadets. The offduty police cadets had nearly had an accident with the plaintiff, who was a taxicab driver, at an intersection. Afterwards, the cadets noticed that the driver had stopped abruptly and they attempted to inquire whether he needed assistance. When the driver saw the cadets approaching his cab, he pulled away from the curb, almost striking one of the cadets. After following the cab, the cadets hailed a patrol car, and the officer within that car arrested the driver. Initially, the officer planned on charging the driver with attempted assault with a motor vehicle, but instead he charged the driver with disorderly conduct. When the judge at the driver's trial found no evidence of disorderly conduct, the charge was changed to "'assault by attempting to strike with a motor vehicle.'" *Id.* at 370. The driver was later acquitted. After the driver filed suit, the district court entered summary judgment for the cadets and the jury returned a verdict for the officer. The plaintiff appealed to the Fourth Circuit, contending that "the arrest was illegal because Maryland law prohibits warrantless arrests for misdemeanors committed outside the arresting officer's presence." *Id.* at 370. As disorderly conduct was a misdemeanor, the Plaintiff claimed that the district court should have directed a verdict in his favor.

The Fourth Circuit noted that Maryland followed the common law rules on warrantless arrest. The Court stated:

**2.** It should be noted that both *Cole* and *Bissonette* were cases that had been disposed of by a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. Therefore the Eight Circuit in these cases did not address the issue of qualified immunity. In fact, in *Bissonette,* the court expressly stated that it was not address-

ing the qualified immunity defense because it had not yet been raised as the defendants had not filed an answer. The court stated that "[t]here may be a qualified-immunity defense here," and asserted that the defendants were free to raise that defense on remand. 800 F.2d at 813.

[I]f [the officer] violated this Maryland law, he may be liable to Plaintiff in an action under the common law of false arrest or false imprisonment. But section 1983 does not provide a remedy for common law torts. Instead it creates a federal cause of action against those acting under the color of state law who cause 'a deprivation of any rights, privileges, or immunities secured by the Constitution and laws (of the United States.)' ... In many cases the same conduct will violate both state law and the federal constitution but certainly not all violations of state law rise to the level of constitutional tort.

*Id.* at 370–71. The Court found that the officer would only be liable if he violated the federal constitutional law governing warrantless arrests. Further, the Court stated:

> The fourth amendment protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed. The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right. Accordingly, there is no cause of action for "false arrest" under section 1983 unless the arresting officer "lacked probable cause."

*Id.* at 372–73. *See Pyles v. Raisor, et al.*, 60 F.3d 1211 (6th Cir.1995) (holding that a warrantless arrest supported by probable cause but in violation of Kentucky law was not actionable under § 1983.); *see also Fields v. City of South Houston, Texas, et al.*, 922 F.2d 1183 (5th Cir.1991) (adopting the holding of the Fourth Circuit in *Surdyka*); *Drewitt v. Pratt, et al.*, 999 F.2d 774 (4th Cir.1993)(holding that a police officer's failure to display his badge while attempting to execute a warrantless misdemeanor arrest might be in violation of Virginia statutory law but officer had probable cause to support his use of deadly force, and was entitled to qualified immunity); *Clark, et al. v. Link, et al.*, 855 F.2d 156 (4th Cir.1988) (referencing *Surdyka*).

Therefore, under *Surdyka*, the Court must determine whether Officer Morris' conduct violated federal constitutional law concerning traffic stops. When evaluating a claim under the Fourth Amendment, a court seeks to determine whether the "particular governmental invasion of a citizen's personal security" is reasonable looking at all of the circumstances. *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

An officer acting beyond his jurisdiction loses his cloak of authority. Barring exigent circumstances, he acts as a private citizen. In Maryland, a private citizen can arrest another citizen only where:

> a) there is a felony being committed in his presence or when a felony has in fact been committed whether or not in his presence, and the arrester has reasonable ground (probable cause) to believe the person he arrests has committed it; or b) a misdemeanor is being committed in the presence or view of the arrester which amounts to a breach of the peace.

*Stevenson v. Maryland*, 287 Md. 504, 413 A.2d 1340, 1345 (1980). A "breach of the peace" has been defined as "disorderly, dangerous conduct disruptive of public peace." *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 261 A.2d 731, 739 (1970). A simple traffic violation, in this Court's view, does not rise to the level of a misdemeanor that amounts to a breach of the peace. As such, a private citizen could not arrest another citizen for speeding. Although a traffic stop is less intrusive than a formal arrest, a private citizen should not be able to intrude upon another citizen's rights in this way. *See Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998).

The Court recognizes that there is a split in the circuits concerning whether an officer acting outside of his jurisdiction necessarily violates the Fourth Amendment. Without a clear pronouncement from the Supreme Court or the Fourth

Circuit, this Court cannot hold that an officer who acts beyond the authority granted to him by state law violates the federal Constitution in all cases. In light of the analysis regarding the authority of a private citizen to effectuate an arrest, however, the Court will assume that Officer Morris' conduct was unreasonable in light of all the circumstances and thus violated Mrs. Horn's Fourth Amendment right to be free from an unreasonable seizure.

■ The determination that a constitutional right has been violated does not end the Court's analysis, however. Officer Morris is still entitled to qualified immunity if a reasonable officer might not have known that the conduct violated that right. Although the Md. Ann.Code of 1957, Article 27, § 594B (m)(2)(ii) clearly states that police officers do not have the statutory authority under that section to enforce Maryland Vehicle Law outside of their jurisdiction, it does not reference any federal constitutional right that would be violated if an officer sought to enforce the Maryland Vehicle Law. Further, there are no Supreme Court, Fourth Circuit or Court of Appeals of Maryland cases which "authoritatively decide" that a violation of this section, or a similar section from another state, necessarily has constitutional implications. The most recent case from the Court of Appeals of Maryland dealing with police officers acting outside of their jurisdiction discusses the general guidelines about that subject, but does not directly address the specific issue at hand. *See Stevenson*, 287 Md. 504, 413 A.2d 1340.[3]

As Defendants state "there is no evidence that Officer Morris- or indeed any other Maryland police officer-received training from the Maryland Police Training Commission or otherwise that his authority to enforce motor vehicle laws of the State is limited to his own sworn jurisdiction." Memorandum in Support at 20. In fact, Officer Morris claims that he learned at the Prince George's County Municipal Police Academy, which follows the guidelines of the Maryland Police Training Commission, that he was to act if he saw a criminal act anywhere within the state. *See* Deposition of Officer Morris at 29–33. Although Officer Morris' subjective beliefs are not dispositive of the issue, they can be considered in the determination of whether a reasonable officer in his position would have known that his conduct violated Mrs. Horn's constitutional rights. Finally, the Prince George's Police Officers aided in the issuance of the citation, with a lieutenant bringing Officer Morris Mrs Horn's license and registration, and a uniformed officer standing by while Officer Morris issued the speeding citation. *See Wullschleger v. Peters, et al.,* 28 F.Supp.2d 549, 560–61 (D.Neb.1998) ("As a result, even if the arrests were made by a police officer who technically lacked authority, the active assistance of other officers, who had authority to make the arrests, renders the actions of all the officers objectively reasonable for qualified immunity purposes."). Under all of the circumstances, Officer Morris is entitled to qualified immunity in this case.

3. The court stated:
Generally, a peace officer's authority to make an arrest is limited, in the absence of statutory authority expanding it, to the confines of the geographical unit of which he is an officer.... At common law, a limited exception to this rule developed which permits an officer who is in "fresh pursuit" of a suspected felon to make a legally binding arrest in a territorial jurisdiction other than the one in which he has been appointed to act ... and this ancient doctrine has, to some extent, been codified in this State... In all other situations, however, a peace officer who makes an arrest while in another jurisdiction does so as a private person, and may only act beyond his bailiwick to the extent that the law of the place of arrest authorizes such individuals to do so.
*Stevenson*, 413 A.2d at 1343 (Md.1980) (citations omitted). The court found that the police officers in that case had acted as private citizens. The court expressly did not consider whether the Fourth Amendment applied to the arrest because it "conclude[d] that these arrests ... were valid under the nonconstitutional law of this State, whose requirements are at least as strict as those of the United States Constitution." *Id.* at 1343.

## III.

■ Defendants also maintain that Plaintiff's § 1983 claim against the City is subject to summary judgment as well. A local governmental entity cannot be held liable for a violation of § 1983 based on the theory of respondeat superior. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a plaintiff must allege that the local governmental entity is directly liable because of an official policy, practice or custom. The Supreme Court of the United States has stated:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to train amounts to deliberate indifference to the rights of person with whom the police come into contact .... Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983 .... Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.

*City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ In the instant case, Plaintiffs have not shown that any policy, custom or practice of the municipality was the 'moving force' behind Officer Morris' action. *Id.* at 22 (citing *Monell v. Dep't. of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). It is undisputed that Officer Morris received his training from the Maryland Police Training Commission. Any deficiency in his training, therefore, would result from the state agency, not the municipality. Plaintiffs have not shown that this training was constitutionally inadequate, or that the municipal was aware of this inadequacy. Moreover, Plaintiffs have not shown that any failure to instruct by Seat Pleasant was the result of its deliberate indifference to the rights of its citizens. Therefore, Plaintiffs' Section 1983 claims against the City of Seat Pleasant are also subject to summary judgment.

## IV.

As all of Plaintiff's federal claims have disposed of, the Court will decline to apply its supplemental jurisdiction over the claims based on state law. Therefore, Plaintiff's state law claims will be remanded back to the Circuit Court for Prince George's County. Accordingly, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

A separate Order consistent with this Opinion will follow.

## ORDER

In accordance with the Memorandum Opinion, it is this 20th of July, 1999, by the United States District Court for the District of Maryland, Southern Division, hereby **ORDERED:**

1. That Defendant's Motion for Summary Judgment [29–1] BE, and the same hereby IS **GRANTED** as to Counts 1, 2, 7, 8, 15, 16, 23, and 24 and **DENIED** as to Counts 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 25, 26, 27, and 28;

2. That Counts 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 25, 26, 27, and 28 BE, and the same hereby ARE **REMANDED** to Circuit Court for Prince George's County;

3. That the Clerk of the Court **CLOSE** this case, and;

4. That the clerk mail copies of this Memorandum Opinion and Order to all parties of record.