**UNITED STATES of America,
Plaintiff,**

v.

**Bryan J. PEACH, Defendant.**

**No. C4–04–33.**

United States District Court,
D. North Dakota,
Northwestern Division.

July 29, 2004.

Reed Alan Soderstrom, Pringle & Herigstad, P.C., Minot, ND, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress Evidence filed on July 1, 2004. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

Deputy Sheriff Mark Nygaard was dispatched to Dorothy Dejarlais's residence near Dunseith, North Dakota, at approximately 1:56 a.m. on April 17, 2004, to investigate harassing telephone calls allegedly made by the defendant, Bryan J. Peach (Peach). While Deputy Nygaard was at the residence the caller phoned back and demanded to speak with his girlfriend, Laurie, who was Dejarlais's daughter. Deputy Nygaard took the telephone, identified himself, and asked the caller to identify himself, to which the caller stated "you know I am Brian put Laurie on the phone or I will kill both of you ..." Upon termination of the call, Deputy Nygaard advised Dejarlais that the Sheriff's Office would handle the matter and that she should not answer her phone in the interim.

Deputy Nygaard returned to Dejarlais's residence at approximately 3:48 a.m. on April 17, 2004, to investigate a complaint that Peach was driving past the residence in a black vehicle and "raising hell." As Deputy Nygaard approached the residence he encountered a black vehicle traveling away from the residence. Upon seeing Deputy Nygaard, the driver of the black vehicle ran a stop sign, crossed highway 281, and sped away east. Deputy Nygaard gave chase, reaching speeds of up to 105 miles per hour. Deputy Nygaard directed the dispatcher to inform Sheriff Tony Simms and the Belcourt Police Department of the situation—that an individual believed to be Peach had earlier threatened to kill Dejarlais and was now fleeing from Dejarlais's residence. Approaching from the east, Deputy Sheriff Melvin Frank attempted to position his vehicle in a manner so as to slow the black vehicle's progress. However, he was unsuccessful.

Bureau of Indian Affairs (BIA) Officer Belgarde joined in the chase as the black vehicle turned north onto a road identified in Deputy Nygaard's incident report as "BIA 15." He was unable to gain ground on the vehicle. Around this same time Al Haggerty, a security officer at the Dunseith Housing Project, advised Deputy Nygaard that the driver of the vehicle could be armed as a man driving a similar vehicle had shot at two units in the Dunseith Housing Project earlier that morning.

Deputy Nygaard lost sight of the black car as he approached Highway 43. Several law enforcement officers began scouring the area for the vehicle. Shortly thereafter, BIA Officer Chris Parisien observed a black Chevrolet Beretta with North Dakota license plate number GXW 098 parked in a pasture/field near Jerry Overby's residence. Officer Parisien radioed Deputy Nygaard to inform him of the vehicle's location. A check of the license revealed that it was registered to Peach.

As BIA Officer Parisien approached, he observed that the vehicle was unoccupied but the hood was warm to the touch. Officer Parisien proceeded to search the interior of the car and found a silver Kyocera cell phone on the front passenger side floor and a live .308 rifle shell underneath the gas pedal. Deputies Frank and Nygaard, along with BIA Officer Belgarde, subsequently reported to Officer Parisien's location. Deputy Nygaard confirmed the Chevrolet Beretta was the vehicle he had chased earlier. The car was impounded,

turned over to BIA Officers Parisien and Belgarde, and towed to Belcourt. A .308 bullet was later recovered from the North Dunseith Project housing unit occupied by Leroy Poitra, Mary Greenleaf, and George Counts.

## II. LEGAL DISCUSSION

The defendant, Bryan Peach, seeks to exclude the following: evidence obtained during a warrantless search of a vehicle registered in his name; evidence of past convictions; the bullet and any evidence and testimony obtained from or regarding the shootings at the residences of Leroy Poitra, Mary Greenleaf and George Counts; and the drive-by shootings at the North Dunseith Housing Project.

### A. WARRANTLESS SEARCH OF PEACH'S VEHICLE

Peach objects to the admission of the Kyocera cell phone and the .308 rifle shell found in his vehicle on the grounds that the warrantless search was unconstitutional. In addition, Peach asserts that the Kyocera cell phone and the .308 rifle shell should be excluded by virtue of the fact that Officer Parisien was outside of his jurisdiction when he searched the vehicle. The Government contends that exigent circumstances justified the warrantless search of the vehicle and, in any event, Peach had abandoned the car and no longer possessed an expectation of privacy. As for Officer Parisien's extra-jurisdictional search, the Government maintains that it does not justify the suppression of any evidence.

### 1) EXCEPTIONS TO THE FOURTH AMENDMENT'S WARRANT REQUIREMENT

The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. The general rule is that the Government must secure a warrant before conducting a search. *United States v. Alberts,* 721 F.2d 636, 638 (8th Cir.1983). When the Government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing that its conduct fell within the bounds of the exception. *United States v. Riedesel,* 987 F.2d 1383, 1388 (8th Cir.1993).

"The 'automobile exception' to the warrant requirement of the Fourth Amendment authorizes warrantless searches of automobiles where the officers have probable cause to believe that contraband or evidence of criminal activity is located therein, and where exigent circumstances exist." *United States v. Hepperle,* 810 F.2d 836, 840 (8th Cir.1987) (citing *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); and *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Exigent circumstances generally exist when the delay in obtaining a warrant is overruled by the need for immediate action. *See United States v. Bozada,* 473 F.2d 389, 391 (8th Cir.1973) ("A pressing need for a prompt search must be reasonably apparent.").

Having reviewed the totality of the circumstances, the Court finds that exigent circumstances existed to justify the warrantless search of Peach's vehicle. First, BIA Officer Parisien had probable cause to believe the vehicle had been used in the commission of a crime. The vehicle matched the description given by Deputy Nygaard of the black car that had fled from Dejarlais's residence at approximately 3:48 a.m. Second, BIA Officer Parisien's search was motivated by safety concerns. The vehicle was registered to Peach and the officers reasonably assumed under the circumstances that it was Peach who had fled from Dejarlais's residence and led

Deputy Nygaard on the high speed chase. In addition, Officer Parisien suspected that Parisien was in the vicinity given that the hood of the vehicle was still warm to the touch. In light of the earlier shooting incidents at the North Dunseith Housing Project and the threats leveled at Deputy Nygaard and Desjarlais, BIA Officer Parisien clearly had a reasonable basis to believe that Peach had access to a firearm and the propensity to act on his alleged threats of violence. Thus, at a minimum, Officer Parisien's search of the vehicle was justified by the need to ascertain whether Peach had left a firearm in the vehicle.

 It should be noted that the vehicle was sitting in an empty field devoid of occupants and presumably unlocked when stumbled upon by BIA Officer Parisien. Thus, by all appearances, the vehicle owned by Peach had been abandoned. As the vehicle had been voluntarily abandoned prior to being discovered by Officer Parisien, the search of its interior would not constitute a violation of Peach's Fourth Amendment rights. "When a person voluntarily abandons property, he forfeits any expectation of privacy that he or she might otherwise have had in it." *United States v. Washington,* 146 F.3d 536, 537 (8th Cir. 1998) (citing *United States v. Sanders,* 130 F.3d 1316, 1317–18 (8th Cir.1997)).

## 2) SEARCH BY BIA OFFICER OUTSIDE THE BOUNDS OF TRIBAL LAND

Peach contends, and for the purposes of this motion the Court accepts, that BIA Officer Parisien was outside of his jurisdiction and was off the reservation when he searched the vehicle. According to Peach, such a search is invalid as it is analogous to a warrantless arrest without probable cause. *See Ross v. Neff,* 905 F.2d 1349 (10th Cir.1990); *Smith v. City of Oklahoma City,* 696 F.2d 784 (10th Cir.1983); *Karr v. Smith,* 774 F.2d 1029, 1031 (10th Cir.1985). In addition, Peach contends the search of his vehicle violated state law to the extent that BIA Officer Parisien was not authorized under state law to perform such a search. See N.D. Cent.Code § § 54–01–06 and 44–08–20.

The Government does not dispute that BIA Officer Parisien performed what amounted to an extra-jurisdictional search of Peach's vehicle because it was located off the reservation. Nevertheless, the Government maintains such conduct does not constitute a basis for excluding evidence recovered from the vehicle because it did not deprive Peach of a federal constitutional right. *See United States v. Mikulski,* 317 F.3d 1228, 1231–33 (10th Cir. 2003).

 To support his contention that a warrantless, off-reservation search is invalid, Peach relies primarily upon the holding in *Ross v. Neff,* 905 F.2d 1349 (10th Cir. 1990). However, in the context of the present case such reliance is misplaced. First, this Court is not bound by the pronouncements of the Tenth Circuit. Second, and more important, Ross does not support the proposition that the warrantless search performed by Officer Parisien was unreasonable or otherwise invalid given the facts of this case.

In Ross, the Tenth Circuit held that "[a]bsent exigent circumstances, [an arrest executed outside of the arresting officer's jurisdiction] is presumptively unreasonable," and "violates the Fourth Amendment." *Ross,* 905 F.2d 1349, 1353–54. Implicit in this holding is the understanding that extra-jurisdictional activity undertaken by an officer while off the reservation is not necessarily unreasonable under the Fourth Amendment if exigent circumstances exist. As noted above, exigent circumstances did exist to justify the search of Peach's vehicle. Even if the reasoning espoused by the Tenth Circuit in

Ross were binding on this Court, the fact that BIA Officer Parisien was off the reservation would not render the search of Peach's vehicle presumptively unreasonable or otherwise violative of the Fourth Amendment.

It remains an open question as to what position the Eighth Circuit would take in the context of the present case. However, the holding in a case entitled *Abbott v. City of Crocker*, 30 F.3d 994 (8th Cir.1994), may provide insight. In *Abbott*, the Eighth Circuit held that the fact an officer had no authority to effectuate an arrest outside city limits for a traffic offense did not establish, as a matter of law, that the arrest constituted a violation of the Fourth Amendment. 30 F.3d 994, 997.

In the wake of *Abbott*, it appears that an off reservation search would not be considered unreasonable per se under the Fourth Amendment. Further, the Defendant was charged with a federal firearms violation under 18 U.S.C. § 922(g). There is no law which prohibits state or federal law enforcement officers from investigating this crime. The crime and charge are not jurisdictionally based upon county or state lines, or reservation boundaries. More important, in light of the existence of exigent circumstances—the recklessness demonstrated by the driver of the black vehicle; the threats allegedly made by Peach to Desjarlais and to Deputy Nygaard; the officers' belief that Peach was armed and in the vicinity; and the officers belief that Peach had a propensity for violence—the Court concludes that the search of the vehicle was reasonable and did not violate the Fourth Amendment. The Court will next address Peach's assertion that BIA Officer Parisien's search violated state law.

Under North Dakota law, a BIA officer arguably has no authority to pursue a search outside the bounds of the reservation. See N.D. Cent.Code. § 44–08–02 ("Peace officers employed by a law enforcement agency with the state have the power of a peace officer in the following circumstances: 1. To enforce state laws and rules within the jurisdiction of the law enforcement agency by which they are employed. . . ."). However, as Abbott makes clear, there is distinction between compliance with state law and constitutional principles.

▆▆▆▆ But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.

> 30 F.3d 994, 997–98 (quoting *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)). Thus, while the question of compliance with state law may be relevant in determining whether an officer's conduct was reasonable for Fourth Amendment purposes, it is not determinative of that issue.

In this case, the Court finds that BIA Officer Parisien's search of the vehicle was conducted in conformity with the Fourth Amendment. Consequently, the Court will not exclude evidence obtained during Officer Parisien's vehicle search.

## B. EVIDENCE AND TESTIMONY REGARDING THE NORTH DUNSEITH HOUSING SHOOTINGS

Peach contends that all evidence regarding the drive-by shootings at the North Dunseith Housing must be excluded under Rules 401 and 403 of the Federal Rules of Evidence because it lacks relevance and is prejudicial in light of the fact that Peach has not been charged in connection with

the shooting. The Government contends that evidence of the shooting relates to the charged conduct, i.e., possession of a firearm or ammunition. The Government also contends that such evidence is relevant to the issue of whether Peach knowingly possessed ammunition.

 The Indictment charges Peach as a felon in possession of a firearm and ammunition, namely a Savage .308 rifle, one Remington–Peters brand .308 caliber ammunition, and one .308 bullet. Clearly, evidence regarding the shooting at the North Dunseith Housing Project directly relates to the charged conduct, that is, possession of a .308 bullet, and such evidence is relevant to the charged conduct. Further, the Court finds that the probative value of such evidence outweighs the claims of prejudice raised by Peach. Peach's request to exclude all evidence relating to the shootings is denied.

## C. EVIDENCE OF PAST CONVICTIONS

Finally, Peach contends that evidence of his four prior felony convictions must be minimized at trial. Peach maintains the Government need only present evidence of one felony conviction to proceed and that evidence of multiple felony convictions is cumulative and prejudicial. The Government asserts that, in the absence of a stipulation from Peach that he is a convicted felon, it is entitled to present evidence of Peach's multiple felony convictions.

Peach is charged with the offense of possession of a firearm by a convicted felon. In order to establish the essential elements of the crime, the Government has the burden to prove that Peach possessed a firearm and that he had been convicted of a crime punishable by a term exceeding one year. To date, there is no indication that Peach has stipulated to his felon status. As such, "it is not improper to present limited evidence of multiple felony convictions in order sustain its burden of proof." *United States v. Jones*, 266 F.3d 804, 811–12 (8th Cir.2001). Peach's motion to exclude testimony or evidence relating to his four felony convictions is denied. In the event the Defendant stipulates to his status as a convicted felon, such evidence will be excluded at trial.

## III. CONCLUSION

Peach's Motion Suppress Evidence (Docket No. 24) is DENIED.

IT IS SO ORDERED.